HATCHETT ET AL. V. MT. PLEASANT BAPTIST CHURCH ET AL.

1. INJUNCTION: *To restrain deposed pastor and adherents from use of church.*
   Where a minister of a congregational church is dismissed by the action of a majority of the church, and he thereafter usurps the pastoral office and attempts to exercise its functions, such majority are entitled to an injunction to restrain him, and to prevent him and his adherents from occupying and using the church without the consent of the majority.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*Blackwood & Williams*, for appellants.

*First*—In case of division of a religious corporation, the title to the church property will remain with those who retain their connection with and continue to conform to the usages and discipline of the organization with which they have been before connected, although they may constitute only a minority. *Lewis v. Watson, 4 Bush (Ky.), 228; McGinnis v. Watson, 41 Pa. St., 9; Winnerbrenner v. Cruder, 43 ib., 244; Ferrario v. Vasconcelles, 31 Ills., 1.*

*Second*—A majority of a church congregation may direct and control in church matters *consistently* with the particular and general laws of the organization or denomination to which it belongs, *but not in violation of them. Sutler et al. v. Trustees of First Dutch Reformed Church, 43 Pa. St., 511; 3 Grant (Pa.), 336; Boulder v. Alexander, 15 Wall, 140.*

Our contention here is that the decree of the chancery court is erroneous:

*First*—Because it overlooks the fact that the use or occupation of the church-house was involved, and was a property right.

*Second*—That to enable the chancellor to enjoin one faction in favor of the other he must look into the acts of the two factions, and see which is acting in accordance with the rules, regulations and usages of the church; that where the civil courts will not review the action of the church on ecclesiastical matter, yet in dispute between two factions, each claiming to be the church, the courts will inquire into the regularity of their proceeding to see which is acting in accordance with the rules, etc., of the church, as was done in *Boulder v. Alexander, 15 Wall., 140.*

In the case of *Sharman v. Frost et al., 3 B. Mon., 253,* the decision is based upon the fact that Sharman *et al.* were excommunicated by à vote of *the church. See page 258 of the opinion.*

In the case at bar the chancellor has gone upon the idea that the party *claiming* to be the church were the church; that because plaintiffs came first, and without notice to appellants, obtained an injunction, and claimed that they were the church, that therefore they were the church.

*W. T. Tucker,* for appellees.

Are the minutes as recorded in the church record true? If true, the court has no power to review them.

The Supreme Court of Kentucky says: "This court having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline. Our only judicial power in the cases arises from the conflicting claims of the parties to church property, and the use of it. *We cannot decide* who ought to be members of the church, *nor whether the excommunicated have been justly or unjustly, regularly or irregularly, cut off from the body of the church (undeserving vine.)" Shannon v. Frost, 3 B. Mon. (Ky), 253,* the leading case. Supreme Court of South Caro-

lina affirms the same doctrine, and says: "But the civil tribunal tries the civil right, and no more, taking the ecclesiastical decisions out of which civil right arises as it finds them." *Homan v. Duber, 1 Spier's Equity (S. C.), 87.*

All of the authorities hold, that where a matter is purely of spiritual cognizance, it is conclusive on the civil courts, which are bound to accept as final the decisions of ecclesiastical bodies as to questions of ecclesiastical right or relations. *Watson v. Jones, 13 Wall., 679.* Also, see, *Watson v. Farris, 45 Mo., 183; Gibson v. Armstrong, 7 B. Mon. (Ky.), 481; John's Island Church Case, 2 Rich. (S. C.), 215; McGinnis v. Watson, 41 Penn. St., 14, 20 and 26; German Reformed Church v. Seibert, 3 Bow., 211; Robertson v. Billan, 9 Barb., 78 and 134; Den v. Batton, 7 Halstead (N. J.), 205–232; Commonwealth v. Green, 4 Wharton, 599; Bouldin v. Alexander, 15 Wall.; 131.*

BATTLE, J. The Mt. Pleasant (colored) Baptist Church employed Peter Hatchett to serve as its pastor for an indefinite period of time. A portion of the members becoming dissatisfied with Hatchett, and disapproving his conduct, attempted to discharge him from the pastorage of the church and to exclude him and his co-defendants, on account of disorderly conduct, from the fellowship of the church. As to Hatchett's discharge as pastor being the action of the majority of the church, the evidence is conflicting. Without undertaking to detail the evidence, it is sufficient to say we find it was.

After his discharge, he and his co-defendants took possession of the house of worship of the Mt. Pleasant Baptist Church, without its consent, and he preached therein and made appointments to preach therein, thereafter, with the view to their occupying and using the same permanently. They insist that they have a right to occupy

and use it in this manner; and that they would have continued to do so, unless prevented, is manifest.

The court below enjoined and restrained Peter Hatchett from preaching, or in any manner officiating in the Mt. Pleasant Baptist Church, and his co-defendants, Isaac Bracy, Ralph Williams and Jesse Patrick, from holding any meetings, or officiating in any manner at any meeting of the Mt. Pleasant Baptist Church, and from interfering or disturbing any regular meeting of said church ; and the defendants appealed.

It is said in *High on Injunctions:* " Upon the question of the right to the preventive aid of equity to restrain a deposed minister from continuing to exercise his clerical functions in the church from which he has been removed, the courts have not been in exact harmony, the ground of difference resting mainly upon diverging views as to whether such an act is an ordinary trespass, which may be remedied at law, or whether the trespass is of that continuing and irreparable nature which can be satisfactorily remedied only by the extraordinary aid of equity.   Upon the one hand, it has been contended that a court of equity should. not enjoin a deposed clergyman from continuing his ministrations in the church from which he has been deposed, since he thereby becomes a mere trespasser, without right, and the courts of law afford ample remedy for such a grievance.   Upon the other hand, it is held, and this doctrine has the clear weight of authority as well as principle in its support, that such an injury is of that continuous and irreparable nature that no rule of damages can rightly measure it, and that it therefore falls within the well defined range of the preventive aid of equity. *High on Injunctions, sec. 311; Trustees v. Stewart, 43 Ill., 81.*

" It has accordingly been held, and this doctrine is supported by the weight of authority, that where a minister of

a congregational church has been dismissed by the action of a majority of the church, and he, thereafter, 'usurps the pastoral office and attempts to exercise its functions by officiating as pastor, such majority are entitled to an injunction to prevent the deposed minister from continuing to officiate in that capacity.'" *High on Injunctions, sec. 311; Perry v. Shipway, 4 DeG. & J., 353;* and *Cooper v. Gordon, L. R., 8 Eq., 249.*

Says *High on Injunctions:* "Courts of equity, having no ecclesiastical jurisdiction, will neither revise nor question the ordinary acts of church discipline or the administration of church government. Their only power arising from the conflicting claims of the parties to the church property and its use, they will not decide as to the status of membership, and will not determine whether members have been properly or improperly excommunicated from a church, but accept the fact of their expulsion as conculsive proof that they are not members, and that, having been expelled by a vote of the church, they are no longer entitled to any of the rights or privileges of membership. Thus, where property has been conveyed in trust for the use and benefit of a religious organization, members of the church who have been excommunicated by a vote of the majority, but who still insist on their right to enjoy and use the church property, and who have taken possession and made periodical use of it without the consent and in defiance of the main body of the members, may be enjoined from interfering with or using the property." *High on Injunctions, sec. 308; Shannon v. Frost, 3 B. Mon., 253.*

The above rule applies especially to congregational churches. How far it applies to other churches, we do not undertake to say. "In a congregational church, the majority, if they adhere to the organization and to the doctrines, represent the church." They control in the govern-

ment of the church, and have a right to select its pastor and control its property.

The Mt. Pleasant (colored) Baptist church, it appears, is a congregational church. The majority had the right to control in the church government and to select its pastor and control its house of worship. Hatchett was only employed for an indefinite period of time. The majority had a right to discharge him. He and his co-defendants had no right to take possession of its church and use and occupy it without the consent and in open defiance of the majority.

The decree of the court below is modified, and a decree will be entered here enjoining and restraining Hatchett from officiating in the capacity of pastor of the Mt. Pleasant Baptist church, without the consent thereof, and enjoining and restraining appellants from interfering with or using its house, without its consent, or against the wishes of the majority.