# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

FINLEY ET AL. V. BRENT ET AL.

November 20th, 1890.

1. RELIGIOUS CONGREGATIONS—*Division—Rights in property—Case at bar.*—H. granted property in trust for the sole and exclusive benefit of the religious congregation of regular orthodox Methodist Protestants of a certain locality. The majority of the congregation left that church and joined the Methodist Episcopal Church: *held,* such majority cannot take with them such property for the use of the latter church.

2. CONSTITUTION—*Impairment of contracts.*—Act of February 18th, 1867 (Acts 1866–7, p. 649), when applied to property theretofore granted in trust for a particular congregation, alters the terms of the trust and impairs the obligation of the contract, and is repugnant both to the Federal and State constitutions.

Appeal from decree of circuit court of Northumberland county, rendered 29th June, 1888, in a chancery cause wherein W. Finley, S. W. Finley and M. E. Eichelberger are complainants, and A. J. Brent, W. P. Anderson, and C. S. Gulick are defendants. The decree dismissed the complainants' bill, and they appealed. Opinion states the case.

*R. L. T. Beale* and *J. B. Sener,* for the appellants.

*W. W. Walker,* for the appellees.

LACY, J., delivered the opinion of the court.

The bill was filed by the appellants to construe a deed made by one William Harding, on the first day of October, 1860, and to enforce the same for their benefit.

This deed was a grant in trust to trustees, by the said William Harding and wife, of a lot or parcel of land described therein, " on which the new Methodist Protestant Church, in Heathsville, was erected, in the said county of Northumberland, for the use and benefit of the religious congregation of the Methodist Protestant Church at Heathsville, which will assemble there for the purpose of worship," to have and to hold the same "in trust for the sole and exclusive use and benefit of religious congregation of regular orthodox Methodist Protestants which may thereafter assemble there to worship, when the said house is completed, or at any church which may hereafter be built at or near the present site or situation, for the purpose of religious worship of the Methodist Protestants, and for no other use or purpose whatever."

The bill set forth that the church edifice was completed, and from that time regularly used and occupied by the Methodist Protestant ministers and congregation from the date of completion up to the year 1871, without molestation or claim from any other religious denomination; that subsequently a claim was asserted to the use of the edifice by the Methodist Episcopal Church, South, and finally the complainants allege that they have been wholly deprived of this church edifice by the ministers and members of the Methodist Episcopal Church, South; that in 1870 an effort was made to effect a corporate union of the two denominations of Methodist Protestants and Methodist Episcopalians in Virginia, and at a regular conference, held at Norfolk in the year 1870, a majority of the delegates attending the conference, by its vote, agreed to dissolve, leaving each individual member free to connect himself with the Methodist Episcopalian organization or not, as he or she might prefer; that immediately after this vote those members of the conference who refused to dissolve their organization, and

formed the minority so voting, organized as a conference of the Methodist Protestant denomination, and continued to meet, with delegates chosen according to the rules and regu= lations of their organization, annually in conference up to 1874, when, by its own action, it united with, and was incor= porated in, the Holston Conference of Methodist Protestants for Virginia; that from its own body of ministers, and min= isters deputed by the sister conference of Maryland, a minis= ter was annually sent to officiate in the circuit of which the society worshipping at Heathsville formed a part, and quar= terly meetings, composed of delegates from this and the other societies in the circuit, were held in the church building, un= til the Methodist Protestants were locked out in 1886, and that now there is a regular orthodox Methodist Protestant minister in charge of the circuit embracing the society at Heathsville; that the trustees now holding the trust in question refused to allow the complainants, and their fellow-members, to occupy or use in any way the said building so deeded to them in trust for the sole and exclusive use of regular orthodox Metho= dist Protestants worshipping at Heathsville.

The defendants demur to and answer, denying every mate= rial allegation of the bill, and, in substance, claim that, since the action of disbandment, referred to above, of the Heaths= ville congregation, in 1871—that is, since the declaration of the majority in the said church conference—that there has been no congregation of the Methodist Protestant Church at Heathsville, and assert their claim, as Methodist Episcopa= lians, to the said church property. There is much contro= versy and dispute between the parties; but both sides admit and claim under the deed creating a trust, which has been set forth at length above, as the deed of William Harding, and the court is called on to construe and enforce this trust.

To this end, we look to the terms of the deed creating the trust set forth above. The terms are for the purpose of Metho= dist Protestants, and for no other use or purpose whatever.

The grant is to trustees of the Methodist Protestant Church; the trust is "for the sole and exclusive use and benefit of the religious congregation of regular orthodox Methodist Protestants which may hereafter assemble there to worship." Must the court enforce the trust according to its terms, to the end designated in the instrument creating it? It is the province of the courts to construe contracts as they are made.

One party claims to be the persons described in the deed; the other admits that they are not, but claim that a majority of the congregation, whom they represent and claim under, have left the Methodist Protestant Church and joined the other church denomination named above, and taken the church property with them. Did the majority of the congregation have the power to alter and change the terms of the trust; if so, whence was it derived? Certainly not from the terms of the grant.

These Christians could change their religious faith, had the right to go to any denomination to which their belief or choice led, and they could take with them all property which belonged to them; but they were without power to change the character of the trust in question.

The question at issue here is not new in the courts of this Commonwealth, and cannot be said to be an open question in this court.

In the case of *Boxwell* v. *Affleck*, 79 Va. Rep., 407, this court, citing with approval *Hoskinson* v. *Pusey*, 32 Gratt., 431, said:

"This court has said upon a similar question, in *Hoskinson* v. *Pusey*: The deed is the same in substance as the deed in *Brooke* v. *Shacklett*, 13 Gratt., 301, and the construction must be the same. According to that construction, the conveyance is not for the use of the Methodist Episcopal Church, in a general sense—such a conveyance in this State would be void; but it is a conveyance for the use of the particular congregation of that church, in the limited and local sense of the term—that is, for the members, as such, of the congregation of the Methodist

Episcopal Church who, from their residence at or near the place of public worship, may be expected to use it for that purpose. Such a conveyance is valid under our statutes. See Code 1873, ch. 78, sec. 8. Who are the beneficiaries entitled to the control and use of the church building? Looking to the deed alone, the answer would be: Those who are members of the congregation or local society, and, as such, members of the Methodist Episcopal Church."

In this case the appellees do not claim to belong to the Methodist Protestant Church at all, but they claim that a majority of the congregation has decided to belong to a different denomination altogether, and they no longer answer the requisites of the trust; and they, under the terms of the deed, can claim no benefit under it.

Who, then, are the *cestuis que trust* under the deed in question—the beneficiaries entitled to the trust estate? Looking to the deed alone, the answer would be those who are members of the congregation or local society, and, as such, members of the Methodist Protestant Church. Opinion of Burks, J., in *Hoskinson* v. *Pusey*, 32 Gratt., 431. And again, according to the test applied in *Deu* v. *Batton*, 7th Halst. (N. J.), 215, cited with approval in the opinion of Judge Daniel, in *Brooke* v. *Shacklett, supra*, "to constitute a member of any church, two points at least are essential, without meaning to say that others are not so—a profession of its faith and a submission to its government."

In this case, as in that, questions are raised as to the membership of these persons; but it is clear that, although few, they are members of that church and congregation professing that faith and a submission to that government. Professing its faith, they receive its pastors, and submit to its discipline and government.

But the appellees make no such claim. They profess to adhere to a different denomination, and deny the government and discipline of the Methodist Protestant Church, and dis-

banded their church society, so far as they could do so, rather than submit to it; and, at the least, abandoned that church and adhered elsewhere.

There is no need of proof, which, however, is not wanting. They admit and claim to be members of the Methodist Episcopal Church, South, recognizing its authority, submitting to its government, and asserting for themselves, and the ministers assigned by this church, a claim to the exclusive use of the church building.

The trust deed in this case must be held to be, under the Constitution and law of this Commonwealth, a valid and binding contract, enforceable as such according to its terms; and, according to its terms, it is a grant to the appellants, or those under whom they claim, and whom they represent, and should be enforced according to its terms, and not otherwise.

The circuit court of Northumberland county dismissed the bill of the plaintiffs, by virtue of the provisions of the act of the Legislature of 1867, (Sess. Acts, pp. 649–'50), providing that, in the contingency of a division of any religious society, it should be lawful for a majority to determine to which branch such congregation shall hereafter belong, which determination, duly reported to court, should conclude questions as to the property held in trust for such congregation. If this act affected this contract of Harding and wife at all, it impaired its obligation, deprived the *cestuis que trusts* named therein, and created by the trust, of their property rights, and conveyed the right to dispose of this property to others than those to whom it was granted, and vested in others the power to divest the right of property existing under its provisions, and dispose of these to other persons, and for a different purpose than that which the deed provided for. This was beyond the legislative power, and was in violation of the Constitution of the United States, sec. 10, Art. I., and of the Constitution of Virginia, Art. V., sec. 14, and is therefore void and of no effect.

The terms of the deed must be followed and its trusts enforced

as they are there created, and the beneficiaries thereunder can be no others than such as the deed provides for.

The decree of the circuit court of Northumberland, having been contrary to these views, is erroneous, and must be reversed and annulled, and the cause remanded to the said circuit court for proceedings to be had therein in accordance with this opinion, and in order to a final decree in the cause, providing for the relief asked for in the bill of the plaintiffs.

DECREE REVERSED.