BOOKER v. SMITH.

4-8595                                          214 S. W. 2d 513

Opinion delivered November 15, 1948.

*C. C. Hollensworth* and *Wilson & Kimpel,* for appellant.

*DuVal L. Purkins,* for appellee.

Ed. F. McFADDIN, Justice. This unfortunate litigation stems from a dispute between the two groups in the Antioch Baptist Church in Bradley county, Arkansas. The Antioch Church was organized prior to 1866. In 1868, a tract of one acre was conveyed to three named persons as "deacons of the Baptist Church in trust for a place of religious worship." This acre has been continuously used for the church building and cemetery. In April, 1937, an adjacent tract of 2½ acres was conveyed to the church "for church purposes and for public burial grounds." The property rights claimed by each group require judicial intervention. See *Elston* v. *Wilborn,* 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R. 179.

### *Facts*

From the evidence in the record, the following facts appear: In 1902, there arose a dispute among some of the Baptist churches in Arkansas as to the handling of money for mission purposes. One group to the dispute was called "Convention Baptists," and the other group was called "Landmark Baptists." This appears as a statement vouched for by a witness: " 'In 1902, a division came among Arkansas Baptists and the Landmark body was organized.' " The same witness said of the Antioch Church: "Q. You testified that it could not have been a Landmark Church before 1902, because the Landmark Church was not organized before 1902? A. The Landmark Association was not."

The dispute between the Landmark Baptists and the Convention Baptists finally came to the surface in the Antioch Church in 1924. In September of that year, at a regular meeting of the church, there was a vote taken to determine whether the Antioch Church would adhere to the Convention Baptists or to the Landmark Baptists; and the vote was 31 for the Convention Baptists and 14 for the Landmark Baptists.[1] Here is typical testimony

---

[1] Page 80 of the church record reflects:

"Church of Christ at Antioch, met in regular conference Saturday before the first Sunday in September, 1924.

"First motion by J. W. Hampton, seconded by J. A. Givens, that all who wanted to remain with the old Missionary Baptist Church as it had always been, for 31, against 14."

as to that voting: ''Q. The rules of your church provide for majority rule? A. Yes, sir. Q. Were you present when they took a vote on who stayed and who left? A. Yes, sir. Q. Do you know whether it was considered by everybody until the split to be Convention or Landmark? A. I did not hear anything about it until then; and they asked me which side I. was on and I said 'Convention side'; and I stayed right where I was. Q. The Convention side got more votes than the Landmark? A. Yes, sir.''

Thus, in September, 1924, the Antioch Church, by a majority vote, adhered to the Convention Baptists. Within a few days thereafter J. H. Langston, a member of the Landmark group in the Antioch Church, filed a replevin action in the justice of the peace court against W. E. Creed to replevin the Antioch Church records, since Creed was the clerk of the Convention group which had gained control by the voting previously mentioned. The justice of the peace case was decided for the defendant, W. E. Creed, and Langston appealed to the circuit court. On January 5, 1925, Langston's appeal was dismissed. This was the result of a settlement agreement between the two groups as to the use of the church. The church minutes read: ''Church of Christ, Antioch; Second Sunday in October, 1924. W. E. Creed elected Moderator, J. W. Hampton, Clerk Pro Tem. By motion, seconded, granted Landmark's use of the Church half time, they to have the first and third Sundays. There being no further business, conference adjourned.''

In short, the congregation had voted 31 to 14 to adhere to the Convention Baptists; the Landmark group had unsuccessfully tried to replevin the church records; and then a settlement was effectuated, whereby the Landmark Baptists were allowed to *use* the church building the first and third Sundays of each month, since the Convention Baptists held services only on the second and fourth Sundays. The settlement agreement stated that if one group commenced a revival service on its Sunday, and continued the revival over into the following Sunday, then the other group would allow the revival services to thus continue. The agreement had no provision

for use of the church by either group on the fifth Sunday in any month.

One of the Convention Baptists who participated in the settlement agreement, and in subsequent matters, testified: ''Q. That was in 1924. Did you coöperate together after then? A. We used the same building, and some of us would go to their church services and some of them came to our church services. Of course, in conference we did not have anything to say, but listened to the preacher. Of course, there was some little confusion along, but not much until last year, when our meeting started. I believe it was on the fourth Sunday in some month, and it ran over to the fifth Sunday; and they came in there and said they were going to have fifth Sunday meeting there on Saturday and Sunday; but we got by with that. Then, this past summer we were having a meeting which started on the fourth Sunday and ran through the first Sunday, and of course some of them attended the service, and we were glad to have them. Then, on Sunday their preacher was there, and after church he got up. The Convention preacher said we would be dismissed; and the Landmark preacher said we were not ready to dismiss, he had something to say. Q. That was during the Convention revival meeting? A. Yes, sir. The Convention preacher said we would be dismissed. The Landmark preacher said he had something he wanted to say. He shook his finger right in the other preacher's face, and said, 'I don't believe what you preach, and you don't believe what I preach, and you know it is that way; and if it is your church we will get out, and if it is ours you get out; and I am going to appoint a committee to see whose church it is.' ''

Thus, after a joint use of the church building for over 20 years, the Landmark Baptists filed suit in the chancery court against the Convention Baptists seeking to gain absolute control of the church property, or—in the alternative—to have a new vote taken to determine which is numerically the larger of the two groups at the present time. The chancery court entered a decree: (a) awarding the 2½ acres to the Landmark group absolutely; (b) directing a sale of the one acre and church

building thereon; and (c) dividing the proceeds of the said sale, 31/45ths to the Convention Baptist group and 14/45ths to the Landmark Baptist group. This division of the proceeds of the sale was in keeping with the percentage of the votes cast by the respective groups in the 1924 church election previously mentioned.

Appellants here are the representatives of the Convention Baptist group, and they claim full control of all the church property subject only to the use agreement made in 1924. Appellees are the representatives of the Landmark Baptist group, and are seeking either to sustain the decree of the chancery court or—by cross appeal —to obtain an election to determine the present numerical strength of the two groups. It is admitted that both the Convention group and the Landmark group at Antioch have remained true to the Faith and Doctrines of the Baptist church.

### Opinion

The only reason for judicial intervention is the settlement of the property rights claimed by the rival groups. See *Elston* v. *Wilborn, supra.* Excellent briefs have been filed by both sides, but we find it unnecessary to discuss the many authorities cited. All parties to this litigation agree that the Antioch Baptist Church has always been a congregational church, as that term was defined in *Elston* v. *Wilborn, supra,* where it was further said: "In congregational groups the affairs are determined by the vote of the majority of the members. The rule is stated in 45 Am. Juris. 764: 'Thus, when a church, strictly congregational or independent in its organization, is governed solely within itself, either by majority of its membership or by such other local organism as it may have instituted for the purpose of ecclesiastical government, and holds property either by way of purchase or donation, with no other specific trust attached to it than that it is for the use of the church, the numerical majority of the membership of the church may ordinarily control the right to the use and title of such property . . . '."

In *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511, Mr. Justice HART, speaking for this Court, said: "In the case

of *Hatchett et al.* v. *Mount Pleasant Baptist Church et al.*, 46 Ark. 291, the Court expressly held that in a congregational church the majority, if they have adhered to the organization and to the doctrines of the church, represent the church. The Court said they control in the government of the church and have a right to select its pastor and control its property. The opinion in the case was delivered by Judge BATTLE, who was specially fitted to speak on the subject, not only because of his learning and eminence in the law, but also because of his long and close connection with the Baptist Faith.''

Applying the foregoing principles to the case at bar, we reach the conclusion that the rights incident to this litigation were settled by the events that took place in 1924, as previously recited.

I. *The Vote and Settlement Agreement in 1924.* In that year the Antioch church voted 31 to 14 that it would adhere to the Convention Baptists. That vote was and is conclusive on the question as to which side constituted the majority. The 31 in the majority had the right to control the property of the church. A short time later, in a spirit of settlement, the majority (*i. e.*, Convention) group voted to allow the Landmark group to *use* the church property on certain Sundays; and the Convention group still offers to fulfill that agreement. All use of the church by the Landmark group after the settlement agreement in 1924 constituted a recognition by that group that it was using the church property under the agreement with the Convention group; and such use—being permissive—could never ripen into adverse possession, or give the Landmark group any greater rights than the settlement agreement contained. The events in 1924 settled the rights of the respective groups.

II. *The 2½-Acre Tract Acquired in 1937.* When this tract was acquired the deed was to the *Antioch Church,* and not to the Landmark group. So the 2½-acre tract became the property of the Antioch Church, and under the control of the majority in the church. That majority was and is the continuation of the Convention group which won the election in 1924 by the vote of 31 to 14.

III. *Appellees' Prayer for a "Clear Election."*
Appellees urge that they are entitled to a "clear election" to determine which group is in numerical majority at the present time; and they insist that the language in *Elston* v. *Wilborn, supra,* is ambiguous in the use of the expression, "clear election." That opinion stated, *inter alia*: "We do not mean that an election can never be called. If—for instance—a complaint should be filed stating that by force, threats, etc., the desire of the majority could not be ascertained, then a court could properly decree a clear election—not to decide the result of a pending case, but as granting the relief prayed, *i. e.,* a clear election."

"Clear" means "Clean; pure; unsullied",[2] and that is the sense in which the word was used in *Elston* v. *Wilborn, supra.* It is not claimed in this case that there was any force, threats, fraud or intimidation practiced by either side in the 1924 election. It was a "clear" election; and the result disclosed the position of each group. Appellants, as the successors in continuation of the majority group in 1924, are still entitled to the full control of the church property subject only to the use agreement.

## Conclusion

Since the majority gained control in 1924, and the minority has used the church building thereafter by permission of the majority, it follows that the decree of the chancery court was erroneous and is hereby reversed; and it is unnecessary for us to discuss the propriety of that portion of the decree concerning partition. In the oral argument in this Court appellants (*i. e.,* Convention Baptists), as the continuation of the 1924 majority faction, agreed that the 1924 agreement could still be continued as to use of the church property on alternate Sundays by the Landmark group; and the appellants also agreed that there could be added to the agreement a provision that the use of the church property, when there was a fifth Sunday in any month, could alternate between the two groups.

---

[2] Webster's New International Dictionary, 2d Ed., printing of 1944.

In the light of the holdings hereinbefore stated, and the said concessions made in the oral argument about the fifth Sunday use, this cause is remanded to the chancery court with directions (a) to set aside and vacate its previous decree, and (b) to enter a decree: finding and holding that the Convention Baptists group, now represented by appellants here, is entitled to the full and complete control of all the church property, subject only to the right of the Landmark group to use the church on the first and third Sundays in each month, with the other provision as to revivals as hereinbefore stated, and with the further order that the two groups will alternate in the use of the church whenever there is a fifth Sunday in any month—the Landmark group to begin by having the first such fifth Sunday in 1949. The Landmark group will be given 30 days after the entry of the decree on remand to file in the chancery court its written certificate of rejection or acceptance as to all continued use. In the event of rejection, all rights of use by the Landmark group will be *ipso facto* terminated. In the event of acceptance, such certificate will imply good faith as to future use and responsibility. All costs of both courts are adjudged against the appellees.

I am authorized to add the following as the views of Mr. Justice Holt:

"I think that in the circumstances here the decree should be reversed and the cause dismissed, for the reason that the appellants—the Convention group—acquired absolute ownership and control of all the property here involved by the election in 1924 (including the 1937 property), and are not bound in any manner to allow the appellees—the minority group—to occupy or enjoy the future use of the property; the offer made in court to allow the continued use was in the nature of an offer in compromise which was not accepted and is not now binding."