ABLES *v.* GARNER.

4-9701                                   246 S. W. 2d 732

Opinion delivered March 10, 1952.

212

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*James M. Rowan, Jr.,* and *L. B. Smead,* for appellant.

*W. C. Medley,* for appellee.

GRIFFIN SMITH, Chief Justice. The controversy involves church property at Cullendale estimated to be worth from $10,000 to $13,000. Included is the Baptist church building erected on land purchased in 1944. At that time members of the Landmark [or Missionary] Baptist Church organized the Immanuel [Missionary] Baptist Church with Clyde Leslie as pastor. Two lots desirable as a building site were bought for $400. Due to the fact that the projected church was without ordained deacons title to the lots was taken in Leslie's name, but admittedly the church membership, or the inchoate organization, supplied the funds. Leslie had no beneficial interest in the transaction.

In May, 1945, Leslie quitclaimed to a newly ordained board of deacons, but the grant was to those named as deacons ". . . of Immanuel [Missionary] Baptist Church of Cullendale, Ark., [known as Landmark Baptist Church] coöperating in and affiliating with the American Baptist Association and the Arkansas Missionary Baptist Association and to the successors of said deacons, including all deacons holding membership in the Immanuel [Missionary] Baptist Church, provided they hold to the doctrines, principles, and practices that the two above Associations now hold." On the deed there was the following writing: "In case of division of affiliation the property falls into the hands of those holding to the principles of the American Baptist Association."

There is testimony that in 1945 Baptist churches known as Landmark, or Missionary, were nearly all affiliated with the American Baptist Association—at that time, according to witnesses, the only national association. As an outgrowth of different religious thought, some of long standing, factional cleavage occurred.

In spite of divergent views, doctrinal beliefs, and impressive observations by Baptist leaders, a point upon which all Baptists appear to be in unison is that each church is independent of any external authority in respect of its own affairs; and further, [says Dr. Henry Clay Vedder, the well known Baptist church historian][1] they draw a corollary which may be reckoned an undisputed common principle—that church and state should be absolutely separate.

This brings us to a consideration of the controverted rights in the case at bar.

In appellee's brief it is stated that the restrictive clause in the deed was placed there to prevent the property from falling into the hands of the Southern Baptist Convention or any Baptist organization not in harmony with the Landmark or Missionary Baptist Church. Testimony to this effect was given by Bro. Leslie, who considered that those comprising the existing board of deacons were adhering to the principles referred to in the deed. This belief was reasserted on cross-examination, but it was qualified to some extent, the modification being that if a Baptist church fails to send messengers to the American Baptist Association he would not consider that the church was affiliated with the association. The Cullendale Church, he said, sent messengers to the North American Baptist Association as observers, but they did not vote. He also testified that the church minutes, wherein action regarding reservations in the grant were authorized, did not correspond with what was written on the back of the deed.

It will be seen that the American Baptist Association is an entity separate and distinct from the North American Baptist Association.

The Chancellor found (1) that the Cullendale organization was congregational, self-contained, and wholly

[1] Dr. Vedder, from 1894 to 1926, was professor of church history in Crozer Theological Seminary at Chester, Pa. Among his published works are Baptists and Liberty of Conscience, The Decline of Infant Baptism, A Short History of the Baptists, American Writers of Today, The Decline of the Apostolic Succession in the Church of England, Fundamentals of Christianity, and (in 1927) A Short History of Baptist Missions. He died in 1935.

independent in matters affecting its status as a church; (2) that incidental conduct of the church, such as the designation of messengers as observers and their attendance when the North Association convened, and conduct of the church in purchasing or in not purchasing particular literature,—these were not such departures from the faith entertained by the acting body as to justify civil interference with property rights. Therefore, said the court, Immanuel [Missionary] Baptist Church at Cullendale could not be judicially restrained from taking ecclesiastical action affecting its religious creed—a result that would inferentially attend if the organization's majority vote and the expressed wishes of most of the members should be disregarded. This majority (approximately 280 of an estimated 300) favored retention of the property and gave assurances that essential tenets had not been impaired. We are unable to say that these findings were contrary to preponderating evidence.

Our cases hold that in a congregational church the majority, acting as local church rules provide, represents the organization unless there is a departure from essential doctrines. *Hatchett* v. *Mt. Pleasant Church,* 46 Ark. 291. Mr. Justice BATTLE quoted with approval from High on Injunctions where the author said that courts of equity, being without ecclesiastical jurisdiction, will neither revise nor question the ordinary acts of church discipline or the administration of church government. To the same effect is *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511. In the Monk case it was said that courts may properly assume jurisdiction of a dispute between factions of a church organization where property rights are involved, but where the congregation is the governing body of a particular church, the majority, when adhering to the organization and the doctrines of the church, will be entitled to control of such property. Judge HART cited *Sanders* v. *Baggerly,* 96 Ark. 117, 131 S. W. 49, where Chief Justice McCULLOCH said that, even in those cases involving civil or property rights, ". . . when questions arise concerning matters of church doctrine or discipline which have been decided by a church court vested

with such jurisdiction by church laws, the civil courts accept as final and conclusive the decisions of the ecclesiastical court."

In the Sanders case Judge McCulloch called attention to *White Lick Quarterly Meeting of Friends, etc., v. White Lick Quarterly Meeting of Friends,* 89 Ind. 136. Reasoning employed by Chief Justice Niblack was stressed, the holding of the Indiana court being that where a civil right depends upon some matter pertaining to ecclesiastical affairs, the civil tribunal tries the civil right, and nothing more, taking the ecclesiastical decisions, out of which the civil right has arisen, as it finds them, and accepting those doctrines as matters adjudicated by another jurisdiction, for [says the opinion], "the civil courts act upon the theory that the ecclesiastical courts are the best judges of merely ecclesiastical questions, and of all matters which concern the doctrines and discipline of the respective religious denominations to which they belong."

One of our more recent decisions—*Elston v. Wilborn,* 208 Ark. 377, 186 S. W. 2d 662—approves a citation from a textual section in American Jurisprudence. A still later case is *Booker v. Smith,* 214 Ark. 102, 214 S. W. 2d 513. It was said that the rights of different factions forming a religious body under the congregational form of church government are to be determined by the membership and that a majority controls. This statement, of course, assumes that the vote has been cast according to established rules. It also presupposes that from a doctrinal standpoint there has not been such an abrupt departure from congregational principles as to discredit the prevailing group as a matter of law.

We have not lightly passed over the indorsement on the deed to the effect that in case of a division in affiliation the property would go to those holding to the principles of the American Baptist Association. There was no such reservation or condition in the deed conveying the two lots to Leslie. The church, by a majority vote, imposed the restriction upon itself as a congregation, and in the light of the trustee's testimony a

particular purpose not inconsistent with existing conditions was intended. If this be true the protesting minority has not been deprived of any property right created when the deed was accepted by the deacons in a manner responsive to the membership vote. The same majority now says that it has not abandoned or substantially deviated from the faith, that its relationships with North American Baptist Association were not of a character conflicting with the doctrinal concepts held by a majority when the deed indorsement was made, and now.

Our conclusions are that the Chancellor did not err in dismissing the complaint.

Affirmed.