MILTON BEARD et al., Complainants, Appellees, v.
REV. G. N. FRANCIS et al., Defendants, Appellants.
—309 S. W. (2d) 788.

Eastern Section. July 9, 1957.

On Petition for Rehearing August 19, 1957.

Petition for Certiorari denied by Supreme Court December 6, 1957.

514

Hugh C. Gallaher, Dayton, and J. Ralph Tedder, Rockwood, for appellants.

O. W. McKenzie, Dayton, for appellees.

McAMIS, P. J., The bill in this case was filed by a minority group of members of the Evensville Baptist church against the pastor, Reverend G. N. Francis, and certain persons representing a majority of the church membership to enjoin defendants from using the church property. The theory of the bill is that defendants, by

refusing to participate in the cooperative program of the Southern Baptist Convention, had departed from the true faith and purpose of the Church with the result that complainants constitute its only authentic membership and are entitled to the exclusive use of its property.

The defendants admit that they prefer to support various church causes and programs by direct contributions rather than through the cooperative program of the Southern Baptist Convention under which many churches combine and jointly administer their benevolences. The learned Chancellor, deciding the case without the benefit of the unreported decision of the Court of Civil Appeals in Beasley, et al. v. Gregory, et al., Troutsdale Equity, decided December 21, 1921, found that the refusal of defendants to participate in the cooperative program constituted such a deviation from accepted usages, practices and beliefs that they no longer constitute the true congregation of the Evensville Baptist Church and that complainants alone are entitled to use the church property.

Defendants have appealed and assigned a number of errors, but we think the correctness of the decree depends in the final analysis upon whether, as the Chancellor held, the refusal of defendants to cooperate and their withdrawal from all Baptist associations and conventions constitute such a radical departure from the fundamental principles and practices of the church that defendants can no longer be identified as the true exponents of its doctrine and faith and authentic members of the congregation.

The Evensville Baptist Church, with the assistance of accredited Baptist ministers, was organized in the early part of 1950. In the Fall of that year it became affiliated

with the Tennessee Valley Baptist Association, an association of Baptist churches located in Rhea County and a portion of Hamilton County, and for some time thereafter it periodically sent messengers to the Tennessee Baptist Convention at Nashville. For some months the Tennessee Baptist Convention contributed $25 per month to the salary of its minister. There is evidence that it joined in the cooperative activities of the Southern Baptist Convention but that on another occasion, prior to the unfortunate events of March 1955, it had declined to cooperate, later, and prior to 1955, resuming its original affiliations and contributions to the cooperative program.

It is unnecessary to relate the events of March, 1955, except to say that at a congregational meeting regularly called a majority of those present including defendants voted to withdraw from the Tennessee Valley Baptist Association and discontinue future contributions to the cooperative fund. Defendants admit this action and give the reasons which prompted it but insist that these are procedural or administrative matters having nothing to do with Baptist belief or doctrine to which they profess complete adherence. They insist that they are still Baptists and that, in fact, there is no such thing as a Southern Baptist Church, each affiliating church being completely autonomous and independent.

The proof shows without substantial dispute that, under Baptist polity and practice, each congregation is free of all control by any higher ecclesiastical authority.

Pendleton's Manual, seemingly respected as authoritative by complainants, states:

"Every church acts voluntarily in connecting itself with an association. There is not—there cannot be—compulsion in the matter. This results from the fact that the Scriptures recognize no higher tribunal than a church.

"It follows, of necessity, that an association is only an advisory body. It may recommend to the churches that they do thus and thus; but it can go no further. It can enact no decrees; and if it did, it would have no power to execute them. It is no Court of Appeals, whose decisions are to nullify those of the churches. Baptists must, with holy jealousy, watch and arrest the first encroachments on the independence of the churches."

Being thus circumscribed the most that an association or convention can do is to "withdraw the hand of fellowship" and refuse to receive the messengers of churches refusing to follow its wishes and recommendations. It can say, and apparently does say, that when a church withdraws from the local association it ipso facto withdraws from the State and Southern Conventions. But does this mean that it is no longer a Baptist church?

We are unable to see how the historic independence of Baptist congregations, with control by the majority, upon which all authorities seem to agree, can be reconciled with the principle urged by complainants that in respect to cooperation local churches are not free but, upon peril of having the title to their property brought in question by a minority, must conform to the program of an association of churches which they are free to join or not to join and from which they can withdraw at any time.

In the unreported decision of Gregory et al. v. Beasley et al., supra, a division of members arose in the Dixon's

Creek Missionary Baptist Church of Lauderdale County over the election of a minister who refused to endorse the action of the Southern Baptist Convention respecting missions and who believed in "supporting missions independently of the Boards and that a Church or a member can send his offering wherever he desires." In sustaining the right of the majority to select a minister of that belief the Court of Civil Appeals said:

"The manner of giving to missions and the channel through which the gift shall pass, the Board or the State Convention or the Committee of the Gospel Mission Association being a mere vehicle for accepting or transporting the gift, is a question of methods * * *. If members of the Baptist Church differ as to the plan or method * * * they can both be perfectly consistent with their own conscience and both engage in a work, each according to his own plan or method. The fact that two churches differ as to methods would not necessarily make either any less Missionary Baptists. As a matter of right each Church would be at liberty to pursue separate and different plans. A member opposing the other members of the Church in the method of handling monies would have a right to do so and to give in any channel he pleases and he would be and remain a member in good standing."

In that case as here the minority sought to claim the church property because, it was claimed, the majority favoring the calling of a minister opposed to the cooperative program had departed from the true practices and doctrines of the Church. As has been seen this insistence was rejected on the ground that only "methods" were involved.

There is no mention of the practice of cooperation in the Manual, supra, the New Directory for Baptist Churches by Dr. Hiscox, filed as an exhibit by Reverend Hipsher, a witness for complainants, or in the Church Covenant, Statement of Principles or Rules of Order, the last three being contained in the minute book of Evensville Baptist Church furnished by Sunday School Board of the Southern Baptist Convention at Nashville, Tennessee. It seems to us that if cooperation was intended to be a fundamental tenet and belief of Baptist churches some mention would have been made of it in these publications.

. It is shown by the proof that local churches many times withdraw cooperative support and later vote to cooperate and there is no suggestion that, upon resuming cooperation, it would be necessary to reorganize these churches as Baptist churches though that would seem to follow from the insistence of complainants.

The majority of a religious society may not, as against faithful adherents to the fundamental and characteristic doctrines of the society, divert its property to another denomination or to the support of doctrines radically and fundamentally different even though the property is not subject to any express trust and, in such a case, the minority members acting in harmony with ecclesiastical laws and remaining faithful to the established doctrines and beliefs are entitled to the property. Nance v. Busby, 91 Tenn. 303, 304, 18 S. W. 874, 15 L. R. A. 801; Bonham v. Harris, 125 Tenn. 452, 145 S. W. 169; 45 Am. Jur. 764; 76 C. J. S. Religious Societies sec. 71, p. 853; Annotation 8 A. L. R. 109; 70 A. L. R. 78.

■ To apply the rule, however, the minority must make a clear showing of a deviation from doctrines imposed on the church. It has no application where the differences have nothing to do with doctrinal beliefs, Russian Orthodox All Saints Church v. Darin, 22 Mich. 35, 192 N. W. 697, nor where the division is based upon doctrinal distinctions which are not vital or substantial. Woodrum v. Burton, 88 W. Va. 322, 107 S. E. 102. By a process of refined reasoning almost any church practice or procedure can be considered as affecting religious standards and policies. But to have the effect of taking away property rights of the majority there must be a radical departure from established fundamental and distinctive practices and beliefs. Mount Olive Primitive Baptist Church v. Patrick, 252 Ala. 672, 42 So. (2d) 617, 20, A. L. R. (2d) 417. In a church having congregational government, if there is a substantial and reasonable doubt as to whether a specific action is doctrinal or procedural, the construction of the majority should control. In such a case the courts should be careful not to trespass upon our highly cherished freedom of conscience in religious practices and beliefs and decline to intrude in the internal affairs of the church.

"(T)he civil courts will not interfere in case of a division in a religious society unless property rights are affected, nor even then *if the basis of the schism is due merely to a disparate interpretation of doctrine. Such matters must be settled by the society itself.* Gewin v. Mt. Pilgrim Baptist Church, 166 Ala. 345, Syl. 3, 4, 51 So. 947, 139 Am. St. Rep. 41." Mount Olive Primitive Baptist Church v. Patrick, supra [252 Ala. 672, 42 So (2d) 618]. (Italics ours.)

■ Whatever the merits and advantages of the co-operative program, and there may be many, we are forced to conclude both upon reason and authority that, in refusing to practice it, defendants have not radically departed from a basic tenet of Baptist doctrine. To hold with complainants would foster church controversies over minor matters of procedure having to do only with methods in accomplishing the common purpose of all and result in unsettling the title to church property each time there occurs some deviation in practice or procedure.

In addition to the refusal of defendants to participate in the cooperative movement complainants also rely upon withdrawal from the State and Southern Conventions and the use of Sunday School literature obtained from the Gospel Union Press. As we read the record, there had been a prior withdrawal from the State and Southern Conventions and also prior use of the Gospel Union literature without causing any dissension and we are therefore of opinion these acts do not amount to a departure from established usage and custom. In addition, the record shows without conflict that a local Baptist Church is free to join or not to join, or to withdraw from, any and all associations of churches. There is no proof that the literature of Gospel Union promotes a doctrine or practice materially different from that of the Southern Baptist Convention with the possible exception that it opposes the cooperative plan.

Complainants place great reliance upon Reid v. Johnston, 241 N. C. 201, 85 S. E. (2d) 114. A careful analysis of that case reveals that the faction claiming to retain the church identity and the right to its property, in addition to withdrawing from the State and Southern

Associations and declining further participation in the cooperative program, had begun to use Church and Sunday School literature teaching the "view of premillennialism" which had become a test of fellowship; had agreed that a single minister embracing that doctrine should have exclusive control of the pulpit with power to dictate who could or could not preach from it and, most important of all, had resolved to take the church into the Independent Baptist Church, an entirely different church denomination. It is apparent that the cleavage in that case was largely theological, though it is true the court embraced in its findings the fact of withdrawal from the State and Southern Associations and refusal to participate in their cooperative programs. The change attempted in that case amounted to a reformation of the church and a change of denominational allegiance, not here present. We are not disposed to follow it under the facts of this case.

The decree must be reversed and the suit dismissed at the cost of the complainants.

Hale and Howard, JJ., concur.

On Petition to Rehear.

McAMIS, P.J. A reference is made in the petition to rehear to the organization of the Evensville Baptist Church as a "Southern Baptist Convention church." The reply brief concedes that it "was organized to adhere to the doctrinal standards and tests of Southern Baptist Convention affiliated churches." Thus the determinative question remains: Does non-cooperation imply such a radical and fundamental departure from established doctrines and beliefs as to warrant a finding of a breach of

trust imposed on the church property or is cooperation merely a procedural implementation of the doctrines and beliefs common to all Southern Baptist Convention churches?

The petition to rehear fails to convince us we erred in our original determination of these questions and it would serve no useful purpose to repeat here the reasons which led us to the conclusions set forth in our original opinion. The petition to rehear is, accordingly, denied.