HOLIMAN *v.* DOVERS.

5-2883

366 S. W. 2d 197

Opinion delivered March 4, 1963.

*M. C. Lewis, Jr.,* for appellant.

*Hall, Purcell & Boswell,* for appellee.

GEORGE ROSE SMITH, J. This is a dispute between two factions in the Landmark Missionary Baptist Church of Traskwood, Arkansas. The appellants, the minority group, brought suit to enjoin the pastor, Elder A. Z. Dovers, and the majority group from using the church property for the preaching and teaching of doctrines fundamentally contrary to the Landmark Missionary Baptist faith. The chancellor refused to grant the relief sought, finding that the deviations which had occurred were not of sufficient consequence to call for the intervention of equity.

This church was organized in 1902 and had existed for almost sixty years when the present controversy, centering upon the pastor's theological views, reached a crisis in 1961. At a church meeting in August of that year the majority, by a vote of 54 to 47, defeated a motion to dismiss the pastor. An ensuing attempt to censure the minority failed, but a week later the majority directed the church clerk to notify the minority members that they would have no voting privileges in the church until they had apologized for their conduct. The minority reacted to that letter by filing this suit a few days later.

Before turning to the proof we may note that the controlling principles of law are not open to serious dispute. The civil courts are not concerned with mere schisms stemming from disputations over matters of religious doctrine, not only because such questions are essentially ecclesiastical rather than judicial but also because of the separation between the church and the state. And even when property rights are involved the rival factions may be remitted to their remedy within the denomination if its form of government is such as to permit an appeal to higher ecclesiastical authority.

The situation is different, however, in the case of self-governing congregational churches, such as the Landmark Missionary Baptists. Here the courts do not hesitate to assume jurisdiction when a schism affects property rights, for in this form of church government each local congregation is independent and autonomous. There is no recourse within the denomination. See *Elston* v. *Wilborn,* 208 Ark. 377, 186 S. W. 2d 662, 158 A. L. R. 179.

Although congregational churches are governed by a majority vote of the membership, the church property must be devoted to church purposes. We mentioned this matter in *Hatchett* v. *Mt. Pleasant Baptist Church,* 46 Ark. 291, saying: ''In a congregational church, the majority, if they adhere to the organization and to the doctrines, represent the church.'' In a later case we added that the majority controls unless there has been ''such an abrupt departure from congregational principles'' as to discredit

the ruling group. *Ables* v. *Garner*, 220 Ark. 211, 246 S. W. 2d 732.

It is firmly settled that the controlling faction will not be permitted to divert the church property to another denomination or to the support of doctrines, usages, and practices basically opposed to those characteristic of the particular church. *Davis* v. *Scher*, 356 Mich. 291, 97 N. W. 2d 137, reviewing many cases; *Reid* v. *Johnston*, 241 N. C. 201, 85 S. E. 2d 114. As the court said in *Dix* v. *Pruitt*, 194 N. C. 64, 138 S. E. 412: "In other words, a majority in a Baptist Church is supreme, or a 'law unto itself' so long as it remains a Baptist church or true to the fundamental usages, customs, doctrine, practice, and organization of Baptists. For instance, if a majority of a Baptist Church should attempt to combine with a Methodist or Presbyterian Church, or in any manner depart from the fundamental faiths, usages, and customs which are distinctively Baptist and which mark out that denomination as a separate entity from all others, then, in such case, the majority could not take the church property with them, for the reason that they would not be acting in accordance with distinctively Baptist principles. Or suppose a majority of a Baptist Church should determine to abandon immersion and receive members without either an individual profession of faith or baptism, such majority could not take possession of the church property and exclude the minority who remained true to the fundamental faith and practice." In harmony with these views equitable relief was granted in *Franke* v. *Mann*, 106 Wis. 118, 81 N. W. 1014, 48 L. R. A. 856, where, as in the case at bar, the controlling group engaged a minister whose beliefs were contrary to those of the sect in question.

The extensive record before us consists mainly of testimony explaining the Landmark Missionary Baptist articles of faith. Among the plaintiffs' many witnesses were nine leading clergymen of this particular sect, whose total ministerial experience exceeded 230 years. These men were in complete agreement about a number of basic doctrines of the church, such as the view that a person who has been saved cannot later become lost, the belief that the un-

pardonable sin (the rejection of Christ) can be committed only by the unsaved, and several other religious tenets that we need not enumerate.

Elder Dovers was the only witness for the defendants. He was thirty-five years old at the time of the trial. His background of experience included an eighth-grade education, seven years work in a filling station, a half year of study in a Missionary Baptist seminary, and seven years in the ministry. Elder Dovers testified at great length and was entirely candid in conceding that he believed and preached doctrines contrary to the Landmark faith as understood by the plaintiffs' witnesses. This pastor derived many of his beliefs from his own study of the Bible. He taught his flock that a person who has been saved can later be lost, that the saved can be guilty of the unpardonable sin, and that he interpreted a number of other articles of faith in a way that differed from the orthodox Landmark Missionary Baptist thinking.

It being substantially undisputed that Elder Dovers' beliefs were contrary to the accepted doctrines and usages of the church, the only remaining question is whether the differences are so important as to justify the intervention of a court of equity. As we have indicated, the variance must be fundamental; relief will not be granted where the division is based upon doctrinal distinctions that are not vital or substantial. *Guin* v. *Johnson,* 230 Ala. 427, 161 So. 810; *Beard* v. *Francis,* Tenn. App. 309 S. W. 2d 788.

Whether particular articles of belief are so fundamental as to be of the very essence of a given creed is evidently a question to be decided by the church itself; the civil courts cannot assume independent authority to arbitrate the niceties of ecclesiastical disputations. Hence we must be guided solely by the evidence in the case, as it sheds light upon the position traditionally taken by the Landmark Missionary Baptist Church.

We find the decided weight of the testimony to be against the chancellor's conclusion that the doctrinal differences disclosed by the evidence are unimportant. Witness after witness testified that these are cardinal beliefs in this church, that anyone who rejects them is not a Land-

mark Baptist, and that the teachings of Elder Dovers are heresy. Several of the minority group felt so strongly about the matter that they had withdrawn from the Traskwood church before the trial. The situation is rather like that described in *Parker* v. *Harper,* 295 Ky. 686, 175 S. W. 2d 361: ''The evidence in the case at bar is that both local groups do regard the grounds upon which they have divided as very vital and substantial. Other than their declarations, the sorry fact is that they have proven to be important and potent enough to break up the struggling little church . . . We are of the opinion there was such departure from the faith of the founders of the church at Martin as calls for the protection of their property rights by the courts.''

In reaching our conclusion we stress the fact that we have no concern whatever with the merits of the theological differences between these parties. The majority members of this church or of any church are of course at liberty to adopt any religious belief they choose, whether it be a liberal Baptist theology, Presbyterianism, Greek Catholicism, or Mohammedanism. Morever, the majority members have a similar right to engage a pastor who will preach the doctrines of their choice. But the vital point is that the majority are not entitled to devote the property of the Landmark Missionary Baptist Church at Traskwood to a faith contrary to that for which it was dedicated. We are aware of no case holding that the majority members of a church have the absolute power to use its property for any purpose they select; certainly no such case has been cited. If the courts are not to afford any protection for property rights in such a situation then there is literally no limit to the purposes to which the majority might divert the church property.

The decree must be reversed, but it seems unnecessary for the appellants to be granted the sweeping relief sought by their complaint, by which all the majority members would be enjoined from taking part in the control of the church property. We think it to be sufficient for Elder Dovers, whose ministry has been the central point of controversy, to be restrained from acting as

pastor of the church. This limitation upon the court's decree may aid the congregation in regaining its original unity.

Reversed.

McFADDIN, J., dissents.

[Supplemental opinion on rehearing delivered April 15, 1963, p. 460.]

ED. F. McFADDIN, Associate Justice (dissenting). The Majority of the Court is deciding questions relating to the religious doctrines of the Landmark Missionary Baptist Church of Traskwood, Arkansas; and I desire to most vigorously disassociate myself from determining such religious questions. I maintain that it is no part of the prerogatives or duties of a Justice of the Arkansas Supreme Court to pass on religious questions.

To buttress its conclusions as to the preponderance of the evidence on the question of what are the fundamental doctrines of the church in question, the Majority says that the preacher, Reverend Dovers, had "an eighth grade education, seven years work in a filling station, a half year of study in a Missionary Baptist Seminary, and seven years in the ministry"; whereas the witnesses for the minority faction in this church dispute on doctrine were "nine leading clergymen of this particular sect, whose total ministerial experience exceeded 230 years." Surely the Majority is not totally unfamiliar with the statement, "A little child shall lead them"![1]

This Court should not decide what are the fundamental doctrines of the Landmark Missionary Baptist Church of Traskwood. Courts are not supposed to decide questions of religious doctrine. In *Elston* v. *Wilborn*, 208 Ark. 377, 186 S. W. 2d 662, this Court[2] said:

"Many questions are mentioned by appellants, such as the calculation and disposition of the tithe, the form of church government, the right of the pastor to 'disfellowship' a member, and other issues of doctrine. Judicial tribunals must leave such matters to ecclesiastical

---

[1] Isaiah 11:6.

[2] The Court was at that time composed of Chief Justice Griffin Smith, and Justices Frank G. Smith, Edgar L. McHaney, J. Seaborn Holt, R. W. Robins, Ed. F. McFaddin, and Minor W. Millwee.

writers. In the United States of America, where Church and State are separate, the courts have steadily asserted their refusal to determine any controversy relating purely to ecclesiastical or spiritual features of a church or religious society. The courts intervene only to protect the temporalities of such bodies, and to determine property rights.''

I maintain that we would do well now to leave matters of doctrine to ecclesiastical writers. Furthermore, in *Elston* v. *Wilborn*, we classified churches as regards the form of church government into four groups, one of which was the congregational group, just as is the Landmark Missionary Baptist Church in the case at bar; and we quoted from 45 Am. Jur. 764:

''Thus, when a church, strictly congregational or independent in its organization, is governed solely within itself, either by majority of its membership or by such other local organism as it may have instituted for the purpose of ecclesiastical government, and holds property either by way of purchase or donation, with no other specific trust attached to it than that it is for the use of the church, the numerical majority of the membership of the church may ordinarily control the right to the use and title of such property.''

It is conceded by all parties that the Landmark Missionary Baptist Church of Traskwood is a *congregational* church and, as such, I contend should be governed by the will of the majority. The church property here in issue was deeded in one instance to the ''Landmark Missionary Baptist Church of Traskwood, Arkansas''; in another instance to the ''Deacons of the Landmark Missionary Baptist Church of Traskwood, Arkansas''; and in another instance to the ''Trustees of the Missionary Baptist Church of Traskwood, Arkansas.'' There was no prohibition in the deeds forever precluding the majority of the church from selecting a preacher who preached as the majority decided, and that is the only real question in this case: is the majority free to select the preacher that it desires?

In *Booker* v. *Smith,* 214 Ark. 102, 214 S. W. 2d 513, there was a dispute between two factions in the Antioch Baptist Church. The opinion recites:

"From the evidence in the record, the following facts appear: In 1902, there arose a dispute among some of the Baptist churches in Arkansas as to the handling of money for mission purposes. One group to the dispute was called 'Convention Baptists,' and the other group was called 'Landmark Baptists.' . . . The dispute between the Landmark Baptists and the Convention Baptists finally came to the surface in the Antioch Church in 1924. In September of that year, at a regular meeting of the church, there was a vote taken to determine whether the Antioch Church would adhere to the Convention Baptists or to the Landmark Baptists; and the vote was 31 for the Convention Baptists and 14 for the Landmark Baptists. . . . "

The dispute in that church as to how the money should be handled for mission purposes was probably as severe as is the dispute in the case at bar, relating to the preaching of Pastor Dover, but in that case we said: "Thus, in September, 1924, the Antioch Church, by a majority vote, adhered to the Convention Baptists." We upheld the right of the majority; and that is what I vote to do in the case at bar.

The Majority Opinion cites cases from other jurisdictions to support the conclusion that the majority in a congregational church cannot rule if it is not adhering to the fundamental faith and practice. I admit there are such cases from other jurisdictions; there are Annotations in 8 A.L.R. 105 and in 70 A.L.R. 75, on facets of this question; but I maintain that Arkansas should not align itself with those other states. We should continue to adhere to what our own cases[3] have held, through the

---

[3] Here are some cases from the Arkansas Supreme Court involving congregational churches; and in each instance — despite any dicta therein contained — we have always upheld the majority faction: *Hatchett* v. *Mt. Pleasant Baptist Church,* 46 Ark. 291; *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511; *Elston* v. *Wilborn,* 208 Ark. 377, 186 S. W. 2d 662; *Booker* v. *Smith,* 214 Ark. 102, 214 S. W. 2d 513; *Ables* v. *Garner,* 220 Ark. 211, 246 S. W. 2d 732; *Chambers* v. *Jones,* 222 Ark. 596, 262 S. W. 2d 285; *Rush* v. *Yancey,* 233 Ark. 883, 349 S. W. 2d 337.

years, as regards congregational churches; we have supported the vote of the majority. I dislike any other conclusion.

In *Ables* v. *Garner*, 220 Ark. 211, 246 S. W. 2d 732, there was an attempt to have this Court decide a doctrinal dispute in a Landmark Missionary Baptist Church; and in refusing to overturn the majority vote of the congregation regarding the disputed issue, we said: "The same majority now says it has not abandoned, or substantially deviated from the faith . . . " In short, the majority of the particular church was allowed to determine its faith; but in the case at bar, this Court is allowing some preachers who are not members of the Landmark Missionary Baptist Church of Traskwood to determine what *should be* the faith 'of the majority of that church. These two sentences, used by Judge Battle in *Hackett* v. *Mt. Pleasant Baptist Church*, appear to me to correctly state the rule:

"The Mt. Pleasant (colored) Baptist Church, it appears, is a congregational church. The majority had the right to control in the church government and to select its pastor and control its house of worship."[4]

To start settling doctrinal questions in congregational church disputes is to embark on a sea of religious turmoil that may ultimately result in shipwreck. Certainly the settling of doctrinal disputes is no part of the duties or prerogatives of Justices of the Arkansas Supreme Court. Heretofore we have followed the principle of "majority rule." That is the way I would dispose of all congregational church questions; so I dissent from the holding of the Majority in the case at bar.

---

[4] In *Monk* v. *Little (supra)*, Justice Hart said of the opinion in *Hatchett* v. *Mt. Pleasant Baptist Church:* "The opinion in the case was delivered by Judge Battle, who was specially fitted to speak on the subject, not only because of his learning and eminence in the law, but also because of his long and close connection with the Baptist faith."