ROWLAND v. WILKERSON

5-3546                                   389 S. W. 2d 627

Opinion Delivered May 3, 1965.

*Don Langston* and *Carl Langston,* for appellant.

*Frances D. Holtzendorff* and *Chowning, Mitchell, Hamilton* and *Burrow,* for appellee.

SAM ROBINSON, Associate Justice. This is a controversy regarding the sale by the Steele Memorial Baptist Church of the real estate on which the church building is located. The Pastor and Trustees agreed to sell the property to Wilson Realty, Inc. for the consideration of $37,000 and executed a deed to Wilson. The Realty Company gave its check in payment of the purchase price, but learned that the authority of the church officials to sell the property was being questioned, and asked that its check be returned, which was done.

Appellants, Aaron Rowland et al, holding themselves out as members of the church, filed this suit to enjoin the

Trustees of the church, and the Pastor, from going through with the sale and to enjoin Wilson from purchasing the property. Appellants allege that a majority of the members of the church had voted against the sale. The Pastor and Trustees answered denying they were without authority to execute the deed, and Wilson answered also denying that the church officials did not have the authority, and asked for specific performance of the contract. The Chancellor held that a majority of the church members, qualified to vote on the question, had approved the sale and ordered the Pastor and Trustees to convey the property to Wilson in accordance with their agreement. These opposing the sale have appealed.

The issue here is narrow. The sole question is whether 43 persons out of 63 who voted against the sale were eligible to vote on the question of selling the property. If the 43 persons were not eligible to so vote, there was a majority in favor of the sale.

The court's position in taking jurisdiction in an issue of this kind is expressed in *Holiman* v. *Dovers*, 236 Ark. 211, 366 S. W. 2d 197. There we said: "The civil courts are not concerned with mere schisms stemming from disputations over matters of religious doctrine, not only because such questions are essentially ecclesiastical rather than judicial but also because of the separation between the church and the state. And even when property rights are involved the rival factions may be remitted to their remedy within the denomination if its form of government is such as to permit an appeal to higher ecclesiastical authority." Here, property rights are involved and the church form of government does not provide for an appeal to higher ecclesiastical authority.

When the vote was taken on the question of selling the church property, 63 of those present voted against the sale; 43 voted for the sale. Later, the Trustees, or Deacons, held that 44 of those voting against the sale were delinquent in paying their church dues and were, therefore, according to the rules of the church, not qualified to vote on the question of selling the church property. Likewise,

it was held that two of those who voted for the sale were disqualified. Hence, the result was 41 valid votes in favor of the sale and 19 valid votes against it.

There is no question about those being delinquent in paying their dues who were found to be delinquent by the Pastor and Deacons. The question is, did such delinquency, according to the governing rules of the church, disqualify from voting those who were delinquent. There is evidence that a good many years ago the church adopted rules as set out in Hiscox Standard Manual for Baptist Churches, and that Hiscox provides no rule whereby a church member is disqualified from voting on church business because he is delinquent with his dues. But the record also shows that the church had adopted Robert's Rules of Order, and that the ''Bible Standard Church Directory'' and ''Busy Pastor's Guide'' were used.

But notwithstanding any rules that may have been adopted prior to that time, the preponderance of the evidence shows that on February 28, 1963, the majority voted to disqualify as voting members of the church those who had nto paid their dues by April 4, 1963, which was before the vote on selling the church property.

Several ministers of the church testified, as experts, that the church has authority to adopt such a rule. Hence, according to the rule prevailing at the time of the vote on selling the property, the 46 members delinquent in their dues were not qualified to vote. A majority of those who were qualified voted in favor of the sale.

The decree is affirmed.