[File No. 6948]

PRESBYTERY OF BISMARCK, a Religious Corporation, H. R. Senecal, Floyd E. Logee and A. O. Henderson, as Trustees of Presbytery of Bismarck, a Religious Corporation, and Gilbert W. Stewart, Floyd E. Logee, H. R. Senecal, A. O. Henderson and A. G. Burr, as a Committee of Presbytery of Bismarck, with Power to Act as the Session of the First Presbyterian Church of Leith, North Dakota, a Religious Corporation, Appellants, v. S. J. ALLEN, Charles Brown, Mrs. J. M. Emch and The First Presbyterian Church of Leith, North Dakota, a Religious Corporation, Respondents.

(22 NW2d 625)

Opinion filed May 1, 1946

*C. L. Young*, for appellants.

*Emil A. Giese*, for respondents.

HUTCHINSON, Dist. J. This action is brought by the plaintiffs to nullify and declare void all proceedings taken by the defendants for the purpose of gaining control and exercising dominion over the church property consisting of a church building and manse and known as The First Presbyterian Church of Leith. The plaintiffs further pray for an order restraining the defendants from further using, controlling and exercising dominion over the church property to the exclusion of the Presbyterian Church in the United States of America and the judicatories and regular representatives of this church; that

the defendant corporation which holds the legal title to the church property be declared by the Court to be a trustee holding such title for the use and benefit of and subject to the jurisdiction and control of the Presbyterian Church in the United States of America through its lawful representatives; that the defendant, S. J. Allen, be restrained from further acting as pastor of the Presbyterian Church of Leith without the consent of the Presbytery of Bismarck, and that the defendants all be enjoined from in any way interfering with the Presbytery of Bismarck in its use, control and occupancy of the church property in question.

This action was tried to the court without a jury and resulted in a judgment dismissing plaintiffs' cause of action. From this judgment the plaintiffs appeal, demanding a trial de novo in this Court.

The respondents moved that the appeal be dismissed on the ground that the action had been settled between the parties and that the appellants had accepted benefits under the judgment. The motion came on for hearing before arguments were heard on the merits. Affidavits were submitted on both sides upon the questions of fact. No good purpose would be served by attempting to recite the contents of the several affidavits. It is sufficient to say that the affidavits failed to establish either that the action had been settled or that the plaintiffs had accepted any benefits under the judgment. Accordingly, the motion to dismiss was denied and the appeal set for argument and heard on the merits.

The significant facts as found by the trial court are not challenged by the plaintiffs. They are briefly stated as follows: In the early settlement of the vicinity of Leith there were people of various church denominational attachments. A pastor evangelist of the Presbyterian denomination first organized a Sunday school, which later and in August, 1910, grew into a church organized as The First Presbyterian Church of Leith. This church was enrolled by the Presbytery of Bismarck on October 5, 1910. Later and on June 23, 1913, the First Presbyterian Church of Leith incorporated as a religious corpora-

tion under the laws of North Dakota. The purpose of the corporation as stated in the articles was "maintaining and promoting religious worship according to the general usages of Presbyterian churches." The articles of incorporation further provided that two thirds of the trustees shall be members of the First Presbyterian Church of Leith. After the church was organized in 1910 a church edifice was built. The local congregation not having sufficient funds, a loan was made by the Board of the Church Erection Fund of the General Assembly of the Presbyterian Church in the United States of America, a part of which loan still remains unpaid. Later a manse was built and a further loan made. From the date of its organization in 1910 to August, 1936, the First Presbyterian Church of Leith continued as a Presbyterian Church under the government of the Presbyterian Church in the United States of America. It recognized the authority of the Presbytery of Bismarck as well as the Synod and General Assembly as provided by the written constitution of the Presbyterian Church in the United States of America. All of its pastors were ordained ministers of the Presbyterian Church in the United States of America. All of its pastors were duly installed by the Presbytery. All of its members were admitted to the Presbyterian denomination, and the Presbytery of Bismarck was duly notified so that the roll of membership could be correctly kept. Over a long period of years its minister's salary was paid in part out of the benevolent fund of the Presbyterian Church in the United States of America. During all of those years it sent its representatives to the Presbytery at Bismarck, was represented at the meetings of the Synod, and in 1936 its pastor was a member of the General Assembly. In fact, during all those years it conducted all of its affairs, both temporal and ecclesiastical, in accordance with the laws, customs and usages of the Presbyterian Church in the United States of America. In 1936 a number of the pastors and laymen of the Presbyterian Church in the United States of America became dissatisfied with some action taken by the General Assembly and they organized a new denomination first known as the First Presbyterian Church of America,

and later named The Orthodox Presbyterian Church. On July 24, 1936, the defendant S. J. Allen, who had been the Presbyterian pastor of the First Presbyterian Church at Leith, notified the Presbytery of Bismarck to strike his name from the roll of the Presbytery, at the same time renouncing all jurisdiction of the Presbyterian Church in the United States of America and identifying himself with the new denomination now known as the Orthodox Presbyterian Church. On August 2, 1936, the congregation of the Presbyterian Church of Leith adopted by a unanimous ballot of all present at the meeting a resolution renouncing the jurisdiction of the Presbyterian Church in the United States of America and authorizing their session and trustees to take such action as might be necessary to exclude the Presbytery of Bismarck from any control of the church property at Leith or any supervision of religious worship in such property, which resolution was by order forwarded to the Presbytery of Bismarck. The Presbytery of Bismarck thereupon severed Mr. Allen's relations as pastor and struck his name from the roll as a minister of the Presbyterian Church and declared vacant the pulpit in the Leith church. The Presbytery of Bismarck sent its representatives to Leith for the purpose of taking control of the temporalities of the Presbyterian church at Leith and taking the necessary steps looking toward filling the pulpit with a new Presbyterian minister, but these representatives have been prevented by the defendants from entering the church or exercising any dominion over the property or any control or supervision of the religious exercises of the church. Since the adoption of the resolution above referred to, the defendants have at all times taken the position that the Presbyterian Church in the United States of America and all of its judicatories and representatives who have sought to exercise authority under the constitution, laws and usages of such church are trespassers without any right whatsoever.

The Presbyterian Church in the United States of America is a religious society and is organized by a written constitution. This constitution is in evidence. It provides for a representative government. The local religious society has its Session.

A certain territory comprising a number of local religious societies is organized into a Presbytery. The Presbyteries of the State are organized as a Synod, and over the Synods there is the General Assembly. Each body, that is, the Session, Presbytery, Synod, and General Assembly, has legislative, administrative, and judicial functions, and appeals may be taken from the decisions of the lower to the next higher body. The whole system of government is based upon the principle that all the members are one church and that the larger body of members should finally determine all controversies of the smaller. The Presbytery generally consists of all of the ministers and one elder from each congregation in the district. It has power to consider and determine appeals from the Session; to ordain, install and remove ministers; to examine and approve or censure the records of the Session; resolve questions of doctrine or discipline; visit churches for inquiry; form or receive new congregations; and appoint a general council, whose duty shall be to make provision for the missionary and benevolent programs of the Church and to supervise church finance in congregations, presbyteries and synods. The constitution provides for the incorporation of the General Assembly, Synod, Presbytery, and each particular church society, to facilitate the management of temporal affairs. At least two thirds of the trustees of a particular church corporation shall be members of said church. No local church property can be encumbered without the consent of the Presbytery.

This action poses the following question: Can the First Presbyterian Church of Leith, a religious corporation organized as a local religious society of the Presbyterian Church in the United States of America by even a unanimous vote of its members secede from such Presbyterian Church in the United States of America without its consent and take with it the church property held in the name of the local corporation.

(1) There is no controversy that a court considers with more reluctance than a dispute between members of a once harmonious religious society. However, the civil courts are open to protect the property rights of religious corporations or associa-

tions and although the performance of the duty is unpleasant, it cannot be avoided. Fortunately in this case the rules of law which will guide us in making this decision have already been well established by courts of last resort. Our state and federal courts have been called upon many times to decide as to who should use and control the temporalities of church societies rent by dissension and irreconcilable differences. Many of the opinions are exhaustive and have been prepared with much labor and care. It is evident that always the underlying purpose has been to preserve our great heritage of religious liberty and maintain the complete separation of church and state.

The general rule of law applicable to this controversy is set forth in 45 Am Jur at pages 775, 777, §§ 66, 68:

"Where property is acquired by a religious society and the conveyance under which the title passes imposes no limitation upon the uses to which the property is to be devoted, so long as any existing organization can be ascertained to be that to which the property was granted, or its regular and legitimate successor, it is entitled to the use of the property. In case of a schism in such an organization, no inquiry will be had into the existing religious opinions of those who comprise the legal and regular organizations; rather, the fundamental inquiry is one of identity of organizations—in other words, which of the rival factions is the true representative and successor of the society as it existed prior to the schism. In general, that question is to be determined by ascertaining which of the two factions adheres to or is sanctioned by the governing body of the society, and those who adhere to the acknowledged organization are entitled to the use of the property whether or not they adhere to the doctrines originally professed. . . ."

"In case of a controversy raised by a schism or division as to rights in property acquired for the general use of a religious congregation which is itself part of a general organization of some religious denomination with which it is more or less intimately connected by religious views and ecclesiastical government, the question of identity is again the criterion in determining which faction is entitled to the property, and is again

to be decided by ascertaining which of the two factions adheres to the governing body of the society."

(2) In 1872 the Supreme Court of the United States was called upon to consider a church case and that court took that occasion to write an exhaustive and well-considered opinion, which has been cited with approval by many of the courts of last resort. It is the case of Watson v. Jones, 13 Wall (US) 679, 20 L ed 666. The Court classified the types of church cases which arise by reason of the nature of the conveyance by which the church property is held or the fundamental difference in church organization in the following language:

"The questions which have come before civil courts concerning the rights to property held by ecclesiastical bodies, may, so far as we have been able to examine them, be profitably classified under three general heads, which, of course, do not include cases governed by considerations applicable to a church established and supported by law as the religion of the State.

"1. The first of these is when the property which is the subject of controversy has been, by the deed or will of the donor, or other instrument by which the property is held, by the express terms of the instrument devoted to the teaching, support or spread of some specific form of religious doctrine or belief.

"2. The second is when the property is held by a religious congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority.

"3. The third is where the religious congregation or ecclesiastical body holding the property is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete in some supreme judicatory over the whole membership of that general organization."

"But the third of these classes of cases is the one which is oftenest found in the courts, and which, with reference to the number and difficulty of the questions involved, and to other considerations, is every way the most important.

"It is the case of property acquired in any of the usual modes for the general use of a religious congregation which is itself part of a large and general organization of some religious denomination, with which it is more or less intimately connected by religious views and ecclesiastical government.

"The case before us is one of this class, growing out of a schism which has divided the congregation and its officers, and the presbytery and synod, and which appeals to the courts to determine the right to the use of the property so acquired. Here is no case of property devoted forever by the instrument which conveyed it, or by any specific declaration of its owner, to the support of any special religious dogmas, or any peculiar form of worship, but property purchased for the use of a religious congregation, and so long as any existing religious congregation can be ascertained to be that congregation, or its regular and legitimate successor, it is entitled to the use of the property. In the case of an independent congregation we have pointed out how this identity, or succession, is to be ascertained, but in cases of this character we are bound to look at the fact that the local congregation is itself but a member of a much larger and more important religious organization, and is under its government and control, and is bound by its orders and judgments. There are in the Presbyterian system of ecclesiastical government, in regular succession, the Presbytery over the session or local church, the Synod over the Presbytery, and the General Assembly over all. These are called, in the language of the church organs, 'judicatories,' and they entertain appeals from the decisions of those below, and prescribe corrective measures in other cases.

"In this class of cases we think the rule of action which should govern the civil courts, founded in a broad and sound view of the relations of church and state under our system of laws, and supported by a preponderating weight of judicial authority is, that, whenever the questions of discipline or of faith, or ecclesiastical rule, custom or law have been decided by the highest of these church judicatories to which the matter has been car-

ried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them."

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for."

(3) It is obvious that the case at bar falls in the third class. The First Presbyterian Church of Leith organized as a Presbyterian church. For more than twenty-five years it continued as an integral part of a larger church body; it recognized the authority and control of the so-called higher judicatory; it incorporated to promote religious worship according to the usages of the Presbyterian Church, which at the time was called The Presbyterian Church in the United States of America; its trustees were bound by the general laws, rules, and customs of said Presbyterian Church.

In Watson v. Jones (US) supra, the court concludes its opinion in the following words:

"But we need pursue this subject no further. Whatever may have been the case before the Kentucky court, the appellants in the case presented to us have separated themselves wholly from the church organization to which they belonged when this controversy commenced. They now deny its authority, denounce its action and refuse to abide by its judgments. They have first erected themselves into a new organization, and have since joined themselves to another totally different, if not hostile, to the one to which they belonged when the difficulty first began. Under any of the decisions which we have examined, the appellants, in their present position, have no right to the property, or to the use of it, which is the subject of this suit."

In a church case heretofore decided we considered the different systems of church politics and distinguished what might be termed the Congregational type from the Catholic, Methodist-Episcopal and Presbyterian type, pointing out that in the Presbyterian type the whole organization constituted the Church and the individual congregation was but a unit governed by the higher bodies. Gudmundson v. Thingvalla Lutheran Church, 29 ND 291, 150 NW 750.

(4) The Supreme Court of South Dakota has had occasion to consider a case whose facts are conceded by the defendants to be almost identical with the facts in the case at bar. In its opinion the Court distinguishes between the local religious society or corporation and the Church, pointing out that the corporation is but an organism of the larger body, holding its property for the use and benefit of the Church. That the Church, in a larger sense, is composed of all its members, governed by its own constitution and administered by its own duly accredited representatives. Presbytery of Huron v. Gordon, 68 SD 228, 300 NW 33.

(5) The right of the defendants to withdraw from the organization of the Presbyterian Church in the United States of America and join another organization is not questioned. But to withdraw and take the church property is another matter. As the court in the case of Fuchs v. Meisel, 102 Mich 357, 60 NW 773, 32 LRA 92, well said:

"In the freedom of conscience and the right to worship allowed in this country, the defendants and the members of this church undoubtedly possessed the right to withdraw from it, with or without reason. But they could not take with them, for their own purposes, or transfer to any other religious body, the property dedicated to and conveyed for the worship of God under the discipline of this religious association; nor could they prevent its use by those who chose to remain in the church, and who represent the regular church organization."

The First Presbyterian Church of Leith is a religious corporation which holds the legal title to the church property in question for the use of the church. The local congregation in the use of the church property as well as in ecclesiastical matters is subject to the ultimate power and control of superior ecclesiastical tribunals. It is but a member of a larger organization under a form of government which subordinates the smaller unit to the final judgment of the larger. The church property does not belong to the local congregation nor to the individual members thereof. Nor does it belong to the higher judicatories. It, in reality, belongs to the Church, which through its tribunals exert the right of use and control. Barkley v. Hayes (DC Mo) 208 F 319; Kelly v. McIntire, 123 NJ Eq 351, 197 A 736; Presbytery of Jersey City v. First Presby. Church, 80 NJL 572, 78 A 207; Russian-Serbian Holy Trinity Orthodox Church v. Kulik, 202 Minn 560, 279 NW 364; Bouchelle v. Presbyterian Congregation at Head of Christiana, 22 Del Ch 58, 194 A 100; Mack v. Kime, 129 Ga 1, 23, 58 SE 184, 24 LRA (NS) 675 (see extensive note); Ramsey v. Hicks, 174 Ind 428, 91 NE 344, 92 NE 164, 30 LRA(NS) 665.

(6) The principles of law, sustained by the weight of authority, and upon which we base our decision, may be summarized as follows: Civil courts will assume jurisdiction where property rights are involved. Where a local religious society holding property is but a subordinate member of a larger organization with ultimate power in some supreme judicatory, the court will follow the decision of the proper ecclesiastical body if such decision becomes important in determining property rights.

414

The ecclesiastical body in making its decisions can interpret its own laws and pass upon its own procedure without court interference. Where the local religious society is an independent organization and owes no fealty or obligation, as far as church government is concerned, to any superior tribunal, then the majority of that local society may determine the use and control of the church property, if the property has not been dedicated to some specific purpose, and provided always that the use of the property is a religious use. When it is obvious and apparent that a church judicatory has acted without jurisdiction, the court will not feel bound by such action. Where real property is conveyed to a local religious association or corporation, which local society is a subordinate member of a general church organization, with superior ecclesiastical tribunals with ultimate power in some supreme judicatory, and the conveyance contains no special trust, then the property is not owned by the local congregation or the individuals thereof, but is held in trust for the general church body and it cannot be used in contravention of the decisions of the superior church judicatory. The court will give assistance to a proper church judicatory which seeks the use and control of church property where the local society has separated itself from the general church organization, denies the authority of the duly constituted tribunals of the mother church and joins itself to another unfriendly organization.

(7) Although the plaintiffs in this case did not base their action on § 10-0813, ND Rev Code 1943, the provisions of this statute are in full harmony with the legal principles heretofore enunciated. In fact, any other conclusion would to a large extent make it extremely difficult to give force to the provisions of this statute.

(8) The defendants argue that the church property, the title to which is held by the First Presbyterian Church of Leith, a religious corporation, is in fact owned by the local church society, and that the Presbytery of Bismarck, the Synod and the General Assembly have no interest in or authority over it whatsoever. That, therefore, any action taken by the Presbytery is

null and void. That the local church society had not only the right to secede from the Presbyterian Church in the United States of America without its consent, but it also had the right, by taking proper action, to take complete control of the church property to the absolute exclusion of the church judicatories of the Presbyterian Church in the United States of America. The defendants have cited a number of authorities which they maintain support the defendants' position. The Court has carefully examined these authorities. A complete analysis of each case here would serve no useful purpose. It is sufficient to say that in many the fact situation is such as to make such cases of little value in deciding this controversy. In others we place upon them a different interpretation than that made by defendants' counsel. The defendants' position is not sustained by the great weight of authority.

The judgment of the lower court must be set aside and the plaintiffs granted the relief to which they are entitled under the legal conclusions expressed in this opinion.

CHRISTIANSON, Ch. J., and NUESSLE, MORRIS and BURKE, JJ., concur.

Mr. Justice BURR, deeming himself disqualified, did not participate. Hon. W. H. HUTCHINSON, Judge of Third Judicial District, sitting in his stead.