HOLIMAN *v.* DOVERS.

5-2883                                     366 S. W. 2d 197

Supplemental opinion on rehearing
delivered April 15, 1963.

GEORGE ROSE SMITH, J., on rehearing. Each side has filed a petition for rehearing. We shall first consider the appellees' petition.

In seeking a reconsideration the majority faction makes two principal contentions. First, it is insisted that our reference to the differences between the congregational form of church government and other forms of church government implies that a congregational church is subject to judicial control in property matters, while other churches are not.

This is not the case at all. It is unquestionably the duty of the courts to decide legal questions involving the ownership and control of church property regardless of the form of ecclesiastical government that may be in effect. A dispute arising in a congregational church, however, may reach the courts more rapidly than a sim-

ilar dispute under another form of church government, for there is no possibility of an appeal to higher authority within the denomination.

When recourse is provided within the denomination itself, the complaining parties must avail themselves of that remedy before resorting to the courts. *Sanders* v. *Baggerly,* 96 Ark. 117, 135, 131 S. W. 49. Yet in many instances, especially when the controversy is between a local church and the parent organization, the dispute, as far as it concerns property rights, is ultimately determined by the civil courts. For example, an individual church is free to secede from the denomination if it elects to do so, but it cannot take the church property with it where the effect of that action would be to devote the property to doctrines fundamentally different from those to which the property was dedicated. *Trustees of Pencader Presbyterian Church* v. *Gibson,* 26 Del. Ch. 375, 22 Atl. 2d 782; *Presbytery of Bismarck* v. *Allen,* 74 N. D. 400, 22 N. W. 2d 625. Conversely, if it is the parent organization that has departed from the basic articles of faith, as by an unauthorized merger with another denomination, the local church has a right not only to secede but also to retain its property. *Boyles* v. *Roberts,* 222 Mo. 613, 121 S. W. 805. Thus the differences in the form of church government do affect the procedure by which a property dispute may reach the courts, but there is no discrimination in the rules that are to be applied when the case is eventually submitted for judicial decision.

Secondly, the majority faction presents this argument: ''The court usurped a function of the local church in deciding that certain doctrines were fundamental because differences among the members thereto resulted in a split in the church. In a congregational church, no authority has the power to determine what doctrines are fundamental to that church. This authority to determine doctrine is solely a matter for the church to decide by vote of the membership.''

On the spiritual side the appellees' position is undoubtedly well taken. The majority group are, as we

stated in our original opinion, completely at liberty to adopt any religious beliefs they choose and to engage a pastor who will preach the doctrines of their choice. For a court to restrict the exercise of such spiritual rights would clearly involve an inadmissible invasion of religious freedom.

But on the temporal side the appellees are wrong. Here the issue is one of property—nothing more. If the majority prevail in this case they will be entitled to remain in control of the physical church property at Traskwood, while the minority will of necessity have to find another place in which to hold their services. If the minority prevail those two roles will be reversed. Thus, stripped of nonessentials, what the majority are contending for in this litigation is not freedom of religious belief but simply the right to enjoy the possession and the use of tangible church property.

That property, however, was acquired by the church through the contributions and sacrifices of many members, past and present, throughout the sixty years that the Traskwood church has existed. The property was dedicated for use as a Landmark Missionary Baptist church. Even though each Landmark Missionary Baptist church is a self-governing unit, the evidence clearly shows that the Landmark Missionary Baptists are a denomination adhering to certain doctrines that are regarded, and have for many years been regarded, as fundamental. It was to the perpetuation of those doctrines that the property now in question was dedicated by those whose efforts brought about its acquisition.

In this situation the majority faction cannot divert the property to beliefs that radically depart from the purposes to which the property was originally dedicated. A fair statement of the general rule appears in *Reid* v. *Johnston*, 241 N. C. 201, 85 S. E. 2d 114: ''While it is true that the North Rocky Mount Missionary Baptist Church is a self-governing unit, a majority of its membership is supreme and is entitled to control its church property only so long as the majority remains true to the fundamental faith, usages, customs, and practices

of this particular church, as accepted by both factions before the dispute arose . . .

"A majority of the membership of the North Rocky Mount Missionary Baptist Church may not, as against a faithful minority, divert the property of that church to another denomination, or to the support of doctrines, usages, customs and practices radically and fundamentally opposed to the characteristic doctrines, usages, customs and practices of that particular church, recognized and accepted by both factions before the dissension, for in such an event the real identity of the church is no longer lodged with the majority group, but resides with the minority adhering to its fundamental faith, usages, customs and practices, before the dissension, who, though small in numbers, are entitled to hold and control the entire property of the church."

The uncompromising position of these appellees—that as the majority group they are absolutely free to divert the church property to any purpose they choose—was stated and answered in an opinion that has become a classic case in this field of the law: "After the majority has recognized itself a party to a controversy that should be settled in the interest of peace and harmony, the claim that it should itself sit in judgment to determine that controversy is somewhat novel. The minority lay at the door of the majority the charge of heresy. The majority say: 'We constitute the church. All power is vested in the church, and hence in us. We determine that the charge is false.' This is the precise claim made by appellees as to the power of a majority, and it is the precise action taken by appellees as a majority in Mt. Zion Baptist Church . . . In view of this, the claim of the majority that 'if it desires to change to a Mormon church it may do so, and no person or persons, no man or body of men, either civil or ecclesiastical, has any right or power to interfere,' is not strange. The position leads to this: Consider the majority of a particular Baptist church as guilty of the grossest violations of and the wildest departure from the church covenants and faith. Being accused by the minority, the accused sit in judg-

ment, which it declares in its favor, and then pleads the judgment it declares as conclusive of its innocence, because no other man or body of men has authority to interfere. However such a rule may serve in purely ecclesiastical relations, we unhesitatingly say the civil law will not adhere to it where the result is to divert trust property from its proper channel." *Mt. Zion Baptist Church* v. *Whitmore,* 83 Iowa 138, 49 N. W. 81, 13 L.R.A. 198.

The principles announced by the Iowa court are so demonstrably logical, so plainly fair and just, so completely unanswerable, that it is not surprising to find that they have been adopted in 27 of the 28 states in which the question now before us appears to have been considered. In most of the cases cited in the appendix to this opinion the courts granted the relief sought, restoring the faithful minority to the control of the church property. In many of the cases the pastor, who was ordinarily selected by the majority, was also enjoined from using the church property. It is true, of course, that in nearly every instance the court was compelled to determine a delicate issue in a religious controversy—whether there had been such a departure from the original articles of belief as to require the intervention of equity. But, in view of the controlling rule of law, that question becomes an issue of fact governing property rights, and consequently it becomes the duty of the court to decide the question, not as an ecclesiastical determination but as a temporal and judicial issue upon which property rights depend.

(For the benefit of those students of the law who may be inclined to study the authorities in detail, we are citing in an appendix to this opinion one case from each of the 27 jurisdictions which have unequivocally adopted what is overwhelmingly the majority view throughout the United States, with only Texas taking the contrary position.)

The appellees' petition for rehearing is denied.

The appellants insist in their petition that in merely restraining Elder Dovers from using the church property

we did not grant the minority the full relief to which they are entitled by law. Upon further consideration we are of the opinion that this contention is correct. We had hoped to promote unity in the church, but it is evident that our proposed solution to the controversy would not achieve that end. We have no doubt that the members of the majority group are wholly sincere in their adherence to the views expressed by Elder Dovers. That being true, it follows that the majority faction could not conscientiously devote the church property to beliefs conforming to the faith, usages, customs, and practices of this church, as they existed before this schism arose. Thus the dispute is certain to recur in the same form as long as the majority faction is in control of the church property.

The appellants' petition for rehearing is granted, and the cause is remanded for the entry of a decree placing the appellants in possession of the church property.

## APPENDIX

Jurisdictions holding that in a controversy such as this one the courts will enjoin the majority faction from devoting the church property to purposes constituting a fundamental departure from the traditional faith, customs, usages, and practices of the church:

Alabama: *Guin* v. *Johnson,* 230 Ala. 427, 161 So. 810.

California: *Baker* v. *Ducker,* 79 Calif. 365, 21 P. 764.

Colorado: *Baptist City Mission Society* v. *People's Tabernacle Congregational Church,* 64 Colo. 574, 174 P. 1118, 8 A.L.R. 102.

Connecticut: *McAuliffe* v. *Russian Greek Catholic Church,* 130 Conn. 521, 36 Atl. 2d 53.

Delaware: *Trustees of Pencader Presbyterian Church* v. *Gibson,* 26 Del. Ch. 375, 22 Atl. 2d 782.

Georgia: *Chatfield* v. *Dennington,* 206 Ga. 762, 58 S. E. 2d 842.

Illinois: *Stallings* v. *Finney,* 287 Ill. 145, 122 N. E. 369.

Indiana: *Smith* v. *Pedigo,* 145 Ind. 361, 33 N. E. 777, 19 L.R.A. 433.

Iowa: *Mt. Zion Baptist Church* v. *Whitmore,* 83 Iowa 138, 49 N. W. 81, 13 L.R.A. 198.

Kansas: *Huber* v. *Thorn,* 189 Kan. 631, 371 P. 2d 143.

Kentucky: *Parker* v. *Harper,* 295 Ky. 686, 175 S. W. 2d 361.

Michigan: *Davis* v. *Scher,* 356 Mich. 291, 97 N. W. 2d 137.

Minnesota: *Lindstrom* v. *Tell,* 131 Minn. 203, 154 N. W. 969.

Mississippi: *Linton* v. *Flowers,* 230 Miss. 838, 94 So. 2d 615.

Missouri: *Boyles* v. *Roberts,* 222 Mo. 613, 121 S. W. 805.

New Hampshire: *Hale* v. *Everett,* 53 N. H. 9, 16 Am. Rep. 82.

New Jersey: *Grupe* v. *Rudisill,* 101 N.J. Eq. 145, 136 Atl. 911.

New York: *Saint Nicholas Ukrainian Orthodox Church* v. *St. Nicholas Ruthenian (Ukrainian) Greek Catholic Church,* 157 N.Y.S. 2d 586.

North Carolina: *Reid* v. *Johnston,* 241 N. C. 201, 85 S. E. 2d 114.

North Dakota: *Presbytery of Bismarck* v. *Allen,* 74 N. D. 400, 22 N. W. 2d 625.

Ohio: *Kemp* v. *Lentz,* 46 Ohio Law Abs. 28, 68 N. E. 2d 339.

Pennsylvania: *Church of God* v. *Church of God,* 355 Pa. 478, 50 Atl. 2d 357.

South Carolina: *Middleton* v. *Ellison,* 95 S. C. 158, 78 S. E. 739.

Tennessee: *Beard* v. *Francis,* 43 Tenn. App. 513, 309 S. W. 2d 788.

Virginia: *Finley* v. *Brent,* 87 Va. 103, 12 S. E. 228.

West Virginia: *Canterbury* v. *Canterbury*, 143 W. Va. 165, 100 S. E. 2d 565.

Wisconsin: *Franke* v. *Mann,* 106 Wis. 118, 81 N. W. 1014.

*Contra.* Texas: *First Baptist Church of Paris* v. *Fort,* 93 Tex. 215, 54 S. W. 892, 49 L.R.A. 617.

(Original opinion delivered March 4, 1963, p. 211.)

CARLETON HARRIS, C. J., concurs.

ED. F. McFADDIN, J., dissents.

CARLETON HARRIS, Chief Justice (concurring). There has been a great deal of confusion and misunderstanding as to the position taken by this court, and I desire to take this opportunity to comment upon these aspects of the case wherein the greatest amount of misunderstanding seems to have arisen.

First, the question of separation of church and state is not involved in this litigation. This court is not concerned with the beliefs of any individual; no one is being told to accept any particular doctrine; no one is advised that one doctrine is preferable to another; Elder Dovers and his followers may expound their beliefs next door to the present building, across the street from the present building, or, as far as we are concerned, at any place in the world—*except in the property involved in this litigation, which was dedicated to another purpose.* This brings me to the second point of misunderstanding.

As a Baptist, I am, of course, well aware that an individual Baptist church is entirely independent and autonomous, and its affairs cannot be directed by the denominational organization. I should like to call attention to the fact that, while the tenets and beliefs of Landmark Missionary Baptist in general were radically departed from by the interpretations and preaching of Elder Dovers, the articles of faith *under which this particular church was operating* were likewise violated.

The third point of misunderstanding is possibly the one that I desire most to comment upon. It has been suggested that in granting the relief sought by appellants, this court has set a precedent, *i.e.,* we have rendered a

holding heretofore unknown to the law, and not found in judicial annals. This assertion is completely and totally erroneous. The majority has pointed out that 27 states have held what this court is holding today, with only one state taking a contrary position. A case is cited in the appendix from each of those 27 jurisdictions; actually, several cases of like import appear in the Reports of each of these states, and in some states numerous cases are cited to the same effect. Most of the cases involve one or another of the various groups of the Baptist faith, though I have read cases that relate to several other denominations that also operate as congregational type churches.

Without endeavoring to determine definitely when the first holding was rendered to this effect, I can say that cases, holding the view herein expressed, have been declared the law as early as 1868. *Hale* v. *Everett,* 16 AM Rep. 82.

The most recent case that I am aware of is *Huber* v. *Thorn,* 371 P. 2d 143. This case was decided less than a year ago (May 5, 1962, with rehearing denied on June 22, 1962) by the Supreme Court of Kansas. The litigation involved the largest Baptist church in Kansas, the First Baptist Church of Wichita. According to the opinion, written by Justice Jackson, the property was worth approximately two million dollars above existing indebtedness. After giving a brief historical review of the Baptist church in this country from the time of Roger Williams, and recognizing "that one of the firm principles of the Baptist church has been that each church was its own master and might run its own affairs as an autonomous church," the court proceeded to discuss the schism that had arisen in the congregation. Though a majority had voted on two occasions (once by a vote of 1,174 to 235, and subsequently by a ratio of 2½ to 1) to take certain action, the Supreme Court found that the vote by the majority violated the tenets, rules and practices of the church, and directed the trial court to issue an injunction against the majority, as sought by the minority. *Reid* v. *Johnston,* 85 S. E. 2d 114, one of several cases from North Carolina, a rather well known case, is cited, and quoted from, in the

present majority opinion. This case was decided a little over eight years ago.[1]

Not only is the overwhelming weight of authority in support of the position here taken, but the language of our own cases is likewise in complete accord. While we have had no cases involving the use of church property, where the evidence established that the majority had departed from basic doctrines and tenets, there is certainly no question in my mind as to the action this court would have taken had that issue been presented and sustained. I should like to briefly discuss our Arkansas cases where Baptist churches were involved.[2] First, however, let it be pointed out that all of the cases (wherein property rights were at issue) hold that a court has jurisdiction to settle property disputes in a congregational church. Reference will be made to this in discussing the opinions.

*Chambers* v. *Jones, Chairman,* 222 Ark. 596, 262 S. W. 2d 285, involved simply the question of whether a pastor was legally discharged. *Rush* v. *Yancey,* 233 Ark. 883, 349 S. W. 2d 337, related to the question of whether a pastor was properly discharged and, further, whether a certain meeting, at which some members were excluded, was a legal meeting. No question of departure from doctrine was raised in either case. In *Hatchett, et al,* v. *Mt. Pleasant Baptist Church, et al,* 46 Ark. 291, a majority of the members of the church discharged the pastor because of disorderly conduct, but he endeavored to continue to preach. Again, no question of deviation from basic church tenets or doctrine was at issue. This court, in upholding the trial court, which had enjoined Hatchett from acting as pastor, said, "In a congregational church, the majority, *if they adhere to the organ-*

---

[1] The North Carolina Supreme Court, in its judgment, stated concisely the general rule: "That the true congregation of the North Rocky Mount Missionary Baptist Church consists of the plaintiffs and all other members of the congregation who adhere and submit to the characteristic doctrines, usages, customs and practices of this particular church, recognized and accepted by both factions of the congregation before the dissension between them arose."

[2] *Rush* v. *Yancey,* 233 Ark. 883, 349 S. W. 2d 337; *Chambers* v. *Jones, Chairman,* 222 Ark. 296, 262 S. W. 2d 285; *Ables* v. *Garner,* 220 Ark. 211, 246 S. W. 2d 732; *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511; *Hatchett* v. *Mt. Pleasant Baptist Church,* 46 Ark. 291; *Booker* v. *Smith,* 214 Ark. 102, 214 S. W. 2d 513.

*ization and to the doctrines,*[3] represent the church.'' In *Monk* v. *Little,* 122 Ark. 7, 182 S. W. 511, a dispute arose in the Little Flock Primitive Baptist Church. Here, two factions disagreed as to who should serve as pastor, but no question of departure from basic doctrine was presented to this court, the contentions relating entirely to two questions, *viz.,* whether the petition of an excluded member for restoration to the church should have been granted,[4] and whether the two factions had agreed to abide by the decision of a council of ministers which had heard the case. Both sides, of course, wanted to use the church property. This court, in its opinion, set forth the two principles of law which are likewise present in the instant litigation. Quoting from that case:

''(1) In the case before us, *property rights are involved, and the court properly assumed jurisdiction of the case.*[5a]

(2) In the case of *Hatchett, et al,* v. *Mount Pleasant Baptist Church, et al,* 46 Ark. 291, the court expressly held that in a congregational church the majority, *if they have adhered to the organization and to the doctrines of the church,*[5b] represent the church.''

In *Ables* v. *Garner,* 220 Ark. 211, 246 S. W. 2d 732, a Landmark Missionary Baptist Church case, the trial court held that conduct of the church, ''such as the designation of messengers as observers and their attendance when the North (American Baptist) Association convened, and conduct of the church in purchasing or in not purchasing particular literature, — these were not such departures from the faith entertained by the acting body as to justify civil interference with property rights.'' The trial court found that essential tenets had not been impaired and this court, on appeal, in an opinion by the late Chief Justice Griffin Smith, said,

''We are unable to say that these findings were contrary to preponderating evidence. Our cases hold that

---

[3] Emphasis supplied.

[4] The original vote on the hiring of the pastor was a tie, and the vote of the excluded member, had he been restored to membership, apparently would have broken the tie.

[5] a. and b. Emphasis supplied.

in a congregational church the majority, acting as local church rules provide, represents the organization *unless there is a departure from essential doctrines.*"[6a]

. Further in the opinion, this court refers to the case of *Booker* v. *Smith,* 214 Ark. 102, 214 S. W. 2d 513, and states,

"It was said that the rights of different factions forming a religious body under the congregational form of church government are to be determined by the membership and that a majority controls. This statement, of course, assumes that the vote has been cast according to established rules. *It also presupposes that from a doctrinal standpoint there has not been such an abrupt departure from congregational principles as to discredit the prevailing group as a matter of law.*"[6b]

*Booker* v. *Smith, supra,* involved the Antioch Baptist Church in Bradley County, Arkansas. The Antioch church was organized prior to 1866. In 1868, a tract of one acre was conveyed to three named persons as "deacons of the Baptist church in trust for a place of religious worship." From the opinion:

"From the evidence in the record, the following facts appear: In 1902, there arose a dispute among some of the Baptist churches in Arkansas as to the handling of money for mission purposes. One group to the dispute was called "Convention Baptists," and the other group was called "Landmark Baptists." This appears as a statement vouched for by a witness: " 'In 1902, a division came among Arkansas Baptists and the Landmark body was organized.' " The same witness said of the Antioch Church: 'Q. You testified that it could not have been a Landmark Church before 1902, because the Landmark Church was not organized before 1902? A. The Landmark Association was not.' "[7]

According to the opinion, the dispute between the two groups within the Antioch Church came to the surface

---

[6] a. and b. Emphasis supplied.

[7] This information was evidently placed in the opinion as a matter of showing that the Landmark Baptists could not have been the intended recipients of the property since this group was not in existence at the time the deed was obtained.

in 1924. At a regular meeting a vote was taken to determine whether the church would adhere to the Convention Baptists or to the Landmark Baptists, and the vote was 31 to 14 for the Convention Baptists. Thereafter, a settlement was effectuated whereby the Landmark Baptists were allowed to use the church building the first and third Sundays of each month, since the Convention Baptists held services only on the second and fourth Sundays. The testimony reflected that members of the two groups would attend the other's church services; however, after 20 years of this joint use of the building, litigation developed which eventually made its way to this court, the case being decided in November, 1948. We said:

"Appellants here are the representatives of the Convention Baptist group, and they claim full control of all the church property subject only to the use agreement made in 1924. Appellees are the representatives of the Landmark Baptist group, and are seeking either to sustain the decree of the chancery court or—by cross appeal—to obtain an election to determine the present numerical strength of the two groups. *It is admitted that both the Convention group and the Landmark group at Antioch have remained true to the Faith and Doctrines of the Baptist church.*[8]

"The only reason for judicial intervention is the settlement of the property rights claimed by the rival groups."

This court held that the matter was settled by the 1924 election, but certainly the question of deviation from basic doctrine was not involved, since, as shown by the opinion (here quoted), both groups were admittedly true to Baptist doctrine. Furthermore, the trust was originally created for "Baptists" and, as shown by the opinion, the Landmark group was not in existence at the time of the execution of the deed.

To me, it is apparent, from this review of our own decisions, that the rule, upon which the present case is decided, was recognized by this court many years ago.

---

[8] Emphasis supplied.

Actually, in nearly 15 years on the bench, I cannot recall any issue where there is more unanimity of opinion by state courts than on the question here presented.

It has been said that a Baptist church is the "purest democracy in the world," which is also to say that majority rule is a recognized principle of that denomination. But like other great principles, legal and constitutional, there is a limitation. For instance, we recognize that every adult citizen of Arkansas is entitled to vote in every election—but only if he holds a proper poll tax receipt! The Constitution of these United States and the Constitution of the State of Arkansas guarantee freedom of speech—but this does not mean that one can slander his neighbor with impunity! Both documents likewise guarantee freedom of the press—but this does not give license to libel! Yes—in a Baptist church, "the majority rule"—but with the limitation that property, dedicated to specific doctrines and tenets, cannot be appropriated by a majority from a faithful minority, and used for the promotion of alien beliefs or dogma!

Accordingly, I am of the view that the property dedicated to the doctrines, usages, customs and practices of the Traskwood Landmark Missionary Baptist Church, *as set forth in the articles of faith and abstract of faith under which the Traskwood church was operating,* cannot be diverted to the use of those whose **doctrines and** usages are contrary to such articles and abstract of faith, and who would thus use the property contrary to the purpose for which it came into being.

ED. F. McFADDIN, Associate Justice (dissenting). On rehearing there is a supplemental opinion and a concurring opinion. In accordance with the views expressed in my original dissent, I would grant the appellees' petition for rehearing and affirm the decree of the Chancery Court. The more I study this case, the more thoroughly I am convinced of the correctness of the views stated in my original dissent; and I register this present dissent so that no one will think I have weakened in my position.